IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff,*<br><br>                v.<br><br>SCOTT SHAW,<br><br>        *Defendant.* | No. 5:22-cr-00105-BLF<br><br>**DEFENDANT'S MOTION TO DISMISS THE INFORMATION FOR FAILURE TO STATE AN OFFENSE (F.R.CR.P. 7(C)(1), 12(B)(3)(B)(V)) OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS (F.R.CR.P. 7(F))**<br><br>Date: November 8, 2022<br>Time: 9:00 a.m.<br>Department: Courtroom 3<br>Judge: Hon. Beth Labson Freeman<br>Date Action Filed: March 10, 2022<br>Trial Date: June 16, 2023 |

SAM J. POLVERINO, CA Bar No. 87563
Law Offices of Sam J. Polverino
1565 The Alameda, Suite 100
San Jose, CA 95126
Tel: (408) 295-3330
Fax:(408) 971-0478
Email: spolverino@sjlawyer.net

JEREMY D. BLANK, CA Bar No. 172571
Law Office of Jeremy D. Blank
1459 18th Street, No. 148
San Francisco, CA 94107
Tel: (415) 710-2728
Fax: (415) 431-2728
Email:  jdb@jeremyblank.com

Attorneys for Defendant
SCOTT SHAW

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES ........................................................................................... ii

DEFENDANT'S MOTION TO DISMISS THE INFORMATION FOR FAILURE TO STATE
AN OFFENSE (FED. R. CRIM. P. 7(C)(1), 12(B)(3)(B)(V)) ........................................1

INTRODUCTION .........................................................................................................1

BRIEF STATEMENT OF FACTS ................................................................................2

STATEMENT OF LAW AND ARGUMENT ...............................................................2

THE REQUIREMENT THAT A SECTION 242 DEFENDANT ACT "UNDER COLOR
OF LAW" IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO SHAW ................2

A.   The Elements of a Violation of 18 U.S.C. § 242 .............................................2

B.   Due Process Requires Fair Notice..................................................................3

C.   Section 242 Failed to Provide Shaw Fair Notice That His Alleged Conduct was
     Conducted "Under Color of Law"..................................................................4

   1.   The "Totality of the Circumstances" Test Employed by the Courts Is Inherently Vague ......4

   2.   Judicial Glosses on the Phrase "Under Color of Law" Do Not Provide Fair
        Notice Either.....................................................................................5

   3.   The Attributes of Conduct that Courts Have Held Constitute "Under Color of
        Law" are Absent Here .......................................................................8

D.   Because Shaw Held No Power Over the Alleged Victims, He Was Not Afforded
     Fair Notice that Section 242 Applied to Him ...............................................10

E.   The Government's Novel Construction of Section 242 .................................12

F.   The Novelty of this Prosecution Underscores Section 242's Susceptibility to
     Arbitrary Enforcement .................................................................................15

MOTION FOR A BILL OF PARTICULARS ..............................................................16

MEMORANDUM IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS ..........17

A.   "Under Color of Law".................................................................................18

B.   "Without [] Consent"..................................................................................19

C.   "Without a Legitimate Purpose"..................................................................19

D.   Location of Offenses Alleged......................................................................20

CONCLUSION ..........................................................................................................20

CERTIFICATE OF SERVICE ...................................................................................21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases:**                                                                                                      Page

*Abdi v. Lovell*
  2009 WL 976503 (D. Ariz. Apr. 9, 2009) ............................................................. 8

*Adickes v. S. H. Kress & Co.*
  398 U.S. 144 (1970) ....................................................................................... 4

*Almand v. DeKalb Cnty., Georgia*
  103 F.3d 1510 (11th Cir. 1997) ...................................................................... 11

*Anderson v. Warner*
  451 F.3d 1063 (9th Cir. 2006) .................................................................... 9, 10

*Bennett v. Pippin*
  74 F.3d 578 (5th Cir. 1996) ............................................................................ 8

*Bond v. United States*
  572 U.S. 844 (2014) ..................................................................................... 12

*Bonenberger v. Plymouth Twp.*
  132 F.3d 20 (3d Cir. 1997) ............................................................................. 8

*Bustos v. Martini Club Inc.*
  599 F.3d 458 (5th Cir. 2010) .......................................................................... 9

*Butler v. Sheriff of Palm Beach Cnty.*
  685 F.3d 1261 (11th Cir. 2012) ...................................................................... 11

*Cassady v. Tackett*
  938 F.2d 693 (6th Cir. 1991) .......................................................................... 7

*Cleveland v. United States*
  531 U.S. 12 (2000) ................................................................................... 13, 14

*Delcambre v. Delcambre*
  635 F.2d 407 (5th Cir. 1981) ......................................................................... 11

*Escalante v. City & Cnty. of Honolulu*
  2018 WL 1748110 (D. Haw. Apr. 11, 2018) ................................................... 10

*Ex parte Virginia*
  100 U.S. 339 (1879) ....................................................................................... 5

*F.C.C. v. Fox Television Stations, Inc.*
  567 U.S. 239 (2012) ....................................................................................... 3

*Galliano v. Borough of Seaside Heights*
  2007 WL 979850 (D.N.J. March 30, 2007) ...................................................... 9

*Gomes v. City of Los Angeles*
  2018 WL 4945691 (C.D. Cal. Oct. 10, 2018) ................................................... 3

*Gritchen v. Collier*
  254 F.3d 807 (9th Cir. 2001) .................................................................... 11, 13

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*
  140 S.Ct. 789 (2020) ................................................................................................ 12, 13

*Guinther v. Wilkinson*
  679 F.Supp. 1066 (D. Utah 1988) ......................................................................... 14

*Hague v. C.I.O.*
  307 U.S. 496 (1939) ...................................................................................................... 5

*Hoit v. Trans. Auth.*
  808 F. App'x 41 (2d Cir. Mar. 30, 2020) ............................................................ 4, 11

*Home Tel. & Tel. Co. v. Los Angeles*
  227 U.S. 278 (1913) ...................................................................................................... 5

*Hughes v. Halifax Cnty. Sch. Bd.*
  855 F.2d 183 (4th Cir. 1988) ................................................................................... 7, 9

*Johnson v. Knowles*
  113 F.3d 1114 (9th Cir. 1997) .................................................................................. 6, 8

*Johnson v. Phillips*
  664 F.3d 232 (8th Cir. 2011) ....................................................................................... 6

*Kelly v. United States*
  140 S.Ct. 1565 (2020) .............................................................................................. 13, 14

*Kern v. City of Rochester*
  93 F.3d 38 (2d Cir. 1996) ............................................................................... 7, 11, 18

*Kile v. Betuel*
  973 F.Supp. 1070 (S.D. Ga. 1997) ............................................................................ 4

*Kolender v. Lawson*
  461 U.S. 352 (1983) ..................................................................................................... 16

*Laxalt v. McClatchy*
  622 F.Supp. 737 (D. Nev. 1985) ................................................................................ 8

*Lee ex rel. Lee v. Borders*
  764 F.3d 966 (8th Cir. 2014) .................................................................................. 9, 20

*M. Kraus & Bros., Inc. v. United States*
  327 U.S. 614 (1945) ..................................................................................................... 12

*Mallar v. City of Adelanto*
  2013 WL 8148647 (C.D. Cal. July 24, 2013) ......................................................... 13

*Manuel v. Sutton*
  2017 WL 8185851 (C.D. Cal. Dec. 11, 2017) .......................................................... 5

*Martínez v. Colon*
  54 F.3d 980 (1st Cir. 1995) .......................................................................................... 5

*McBoyle v. United States*
  283 U.S. 25 (1931) ................................................................................................... 3, 11

*McDade v. West*
  223 F.3d 1135 (9th Cir. 2000) ..................................................................................... 4

*McDonnell v. United States*
   579 U.S. 550 (2016) ................................................................... 14

*Ouzts v. Maryland Nat'l Ins. Co.*
   505 F.2d 547 (9th Cir. 1974) ...................................................... 4

*Parilla-Burgos v. Hernandez-Rivera*
   108 F.3d 445 (1st Cir. 1997) .................................................. 4, 5

*Pfaff v. Wells Elecs., Inc.*
   525 U.S. 55 (1998) ...................................................................... 5

*Pitchell v. Callan*
   13 F.3d 545 (2d Cir. 1994) .................................................. 4, 11

*Polk Cnty. v. Dodson*
   454 U.S. 312 (1981) ................................................................ 7, 18

*Rabe v. Washington*
   405 U.S. 313 (1972) ...................................................................... 3

*Russell v. United States*
   369 U.S. 749 (1962) .............................................................. 17, 18

*Sanchez v. California*
   90 F.Supp.3d 1036 (E.D. Cal. 2015) .......................................... 7

*Screws v. United States*
   325 U.S. 91 (1944) ........................................................... 6, 7, 15

*Seal Flex, Inc. v. Athletic Track & Court Const.*
   98 F.3d 1318 (Fed. Cir. 1996) .................................................... 5

*Sessions v. Dimaya*
   138 S. Ct. 1204 (2018) ............................................................. 16

*Skilling v. United States*
   561 U.S. 358 (2010) .................................................................. 14

*Smith v. Boyle*
   144 F.3d 1060 (7th Cir. 1988) .................................................... 5

*T.G. v. Bd. of Cnty. Comm'rs of Cnty. of Rio Arriba*
   2020 WL 6075662 (D.N.M. Oct. 15, 2020) .................................. 9

*Townsend v. Moya*
   291 F.3d 859 (5th Cir. 2002) ...................................................... 6

*Trs. of Indiana Univ. v. Curry*
   918 F.3d 537 (7th Cir. 2019) ................................................. 4, 18

*United States v. Aguilar*
   515 U.S. 593 (1995) .............................................................. 3, 14

*United States v. Apel*
   571 U.S. 359 (2014) .................................................................. 13

*United States v. Bass*
   404 U.S. 226 (1971) .................................................................... 4

iv

*United States v. Bass*
404 U.S. 336 (1971) ................................................................................ 3

*United States v. Butler*
822 F.2d 1191 (D.C. Cir. 1987) ............................................................ 17

*United States v. Classic*
313 U.S. 299 (1941) ...................................................................... *passim*

*United States v. Colbert*
172 F.3d 592 (8th Cir. 1999) ........................................................... 9, 20

*United States v. Cooney*
217 F. Supp. 417 (D. Colo. 1963) ......................................................... 7

*United States v. Cruikshank*
92 U.S. 542 (1875) ................................................................................ 17

*United States v. Dillon*
532 F.3d 379 (5th Cir. 2008) ............................................................... 18

*United States v. Giordano*
260 F. Supp. 2d 477 (D. Conn. 2002) .......................................... 6, 7, 8, 9

*United States v. Jackson*
235 F.2d 925 (8th Cir. 1956) ................................................................. 3

*United States v. Lanier*
520 U.S. 259 (1997) ............................................................................... 3

*United States v. Nichols*
784 F.3d 666 (10th Cir. 2015) ............................................................. 12

*United States v. Price*
383 U.S. 787 (1966) ............................................................................... 4

*United States v. R.L.C.*
503 U.S. 291 (1992) ............................................................................... 4

*United States v. Resendiz-Ponce*
549 U.S. 102 (2007) ............................................................................. 18

*United States v. Senak*
477 F.2d 304 (7th Cir. 1973) ................................................................. 3

*United States v. Simmons*
96 U.S. 360 (1877) ............................................................................... 18

*United States v. Tarpley*
945 F.2d 806 (5th Cir. 1991) ............................................................. 8, 9

*United States v. U.S. Gypsum Co.*
37 F.Supp. 398 (D.D.C. 1941) ............................................................ 17

*United States v. Williams*
553 U.S. 285 (2008) ............................................................................... 3

*Van Buren v. United States*
141 S.Ct. 1648 (2021) .......................................................................... 14

*Van Ort v. Estate of Stanewich*
    92 F.3d 831 (9th Cir. 1996) ........................................................................... 8, 9

*Vang v. Toyed*
    944 F.2d 476 (9th Cir. 1991) ............................................................................. 10

*West v. Atkins*
    487 U.S. 42 (1988) ............................................................................................. 4

*White v. City of Greensboro*
    532 F.Supp.3d 277 (M.D.N.C. 2021) ................................................................. 9

*Wudtke v. Davel*
    128 F.3d 1057 (7th Cir. 1997) ........................................................................... 14

**Statutes:**

18 U.S.C. § 242 ................................................................................................... *passim*

18 U.S.C. § 1983 ...................................................................................................... 15

**Constitutions:**

U.S. Const., 5th Amend. ............................................................................................ 3

**Court Rules:**

Fed. R. Crim. P., rule 7 ................................................................................... 1, 16, 17

Fed. R. Crim. P., rule 12 ............................................................................. 1, 2, 16, 20

**Other:**

43 Cong. Rec., 60th Cong., 2d Sess. ........................................................................ 15

Aubrey Watson, Bureau of Labor Statistics, Employment and Wages in State and Local
    Government, https://www.bls.gov/spotlight/2021/occupational-employment-and-wages-in-
    state-and-local-government/home.htm (last visited September 19, 2022) ................. 8

Criminal Code of 1909, 35 Stat. 1092 ..................................................................... 15

Eighth Circuit Model Jury Instructions (2021 ed.) ................................................. 10

Eleventh Circuit Pattern Jury Instructions, Criminal Cases (2016 rev.) ................. 10

Fara Gold, *Investigating and Prosecuting Law Enforcement Sexual Misconduct Cases*, United
    States Attorneys' Bulletin (Jan. 2018) ................................................................. 14

Fara Gold, *Investigating and Prosecuting Sexual Misconduct Committed by Law Enforcement*,
    35 ABA Criminal Justice (Winter 2021) ....................................................... 12, 16

George Floyd Justice in Policing Act of 2021 (H.R. 1280, 117th Cong. (2021) ....................... 15

*Statutes Enforced By The Criminal Section, U.S. Dep't Of Just.*, https://www.justice.gov/crt/
    statutes-enforced-criminal-section (last updated August 31, 2022) .................... 12

Taryn A. Merkl, *Protecting Against Police Brutality and Official Misconduct: A New Federal
    Criminal Civil Rights Framework*, Brennan Center for Justice at New York University
    School of Law (April 29, 2021) ........................................................................ 15

Tenth Circuit Criminal Pattern Jury Instructions (2021 ed.) ........................................................ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANT'S MOTION TO DISMISS THE INFORMATION FOR FAILURE TO STATE AN OFFENSE (Fed. R. Crim. P. 7(c)(1), 12(b)(3)(B)(v))**

Defendant Scott Shaw, by and through his counsel Sam J. Polverino and Jeremy D. Blank, respectfully moves this Court, pursuant to Federal Rules of Criminal Procedure 7(c)(1) and 12(b)(3)(B)(v), to dismiss Counts One through Six of the Information for failure to state an offense or, in the alternative and pursuant to Federal Rule of Criminal Procedure 7(f), to direct the government to file a bill of particulars.

## INTRODUCTION

This case is the first of its kind, but if allowed to proceed, many more will surely follow. Defendant Scott Shaw was an athletic trainer at San Jose State University who is alleged to have inappropriately touched four student-athletes on six separate occasions during the course of their physical therapy. For what appears to be the first time, the government has brought a prosecution for such alleged conduct under 18 U.S.C. § 242, Deprivation of Civil Rights Under Color of Law, in a case in which the alleged victims were adults; consented at the time to the acts comprising the alleged deprivation of their civil rights; were under no obligation, legal or otherwise, to submit to any physical contact with the defendant; and were not subject to the custody, control or influence of the defendant.

To be sure, the government has often successfully, and appropriately, used Section 242 to prosecute police officers who have committed sexual or violent acts against victims who were in their legal or physical custody. It has successfully prosecuted prison wardens and guards who have abused their positions of power over their prisoners for sadistic or sexual purposes. It has successfully prosecuted elected officials who have coerced sexual favors from their constituents through threats or incentives made possible through their abuse of official powers and assertions of executive authority. But never to the defense's knowledge has the government charged a mere employee of a State institution, wielding neither official authority nor any coercive influence whatsoever over the alleged adult victims, with violating their civil rights by touching them in an allegedly inappropriate manner.

The novelty of this prosecution is exemplified by the fact that the position Mr. Shaw held at San Jose State University, which the government alleges brought him within the ambit of acting under "color of

1

state law," was as an athletic trainer, a position that not only (1) *required him* to come into physical contact with student-athletes of both genders at *their* request, but, more importantly, (2) also gave him no legal authority or coercive influence over the student-athletes who comprise the named victims.

Because Shaw did not have, and could not have had, due process notice sufficient to apprise him that the acts alleged in the Information could have been undertaken "under color of law" and therefore constitute a violation of 18 U.S.C. § 242, this Court should grant the defendant's motion to dismiss the Information under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) for failure to state an offense. Alternatively, this Court should direct the government to file a bill of particulars.

## BRIEF STATEMENT OF FACTS

Scott Shaw was employed as the Head Athletic Trainer at California State University-Northridge from 2001–2006. In 2006, he accepted a position as Associate Head Athletic Trainer for San Jose State University ("SJSU"), a member of the California State University system. In 2007, he was promoted to Head Athletic Trainer and Director of Sports Medicine. In that capacity, he supervised athletic trainers; provided consultation and physical therapy to SJSU student-athletes; and coordinated medical services for student-athletes. He retired in 2020.

The skeletal allegations in the Information, ECF 1, are: (a) that Shaw was employed by SJSU, a public university, and by virtue of that employment was "required to act in compliance with the United States Constitution," ECF 1 ¶ 1–3; (b) that the four alleged victims were female student-athletes at SJSU, ECF 1 ¶ 4; and (c) that on various dates, Shaw touched each victim's breast or buttocks "without [her] consent" and "while acting under color of law and [] without a legitimate purpose, thereby willfully depriving [each victim] of liberty without due process of law, which includes the right to bodily integrity, a right secured and protected by the Constitution and laws of the United States." ECF 1 ¶¶ 5–10.

## STATEMENT OF LAW AND ARGUMENT

### THE REQUIREMENT THAT A SECTION 242 DEFENDANT ACT "UNDER COLOR OF LAW" IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO SHAW

#### A.   The Elements of a Violation of 18 U.S.C. § 242

Generally, to obtain a conviction under Section 242, the government must prove that: (1) the

defendant's acts must have deprived someone of a right secured or protected by the Constitution or laws of the United States; (2) the defendant's illegal acts must have been committed under color of law; (3) the person deprived of his or her rights must have been an inhabitant of a state, territory or district; and (4) the defendant must have acted willfully. *See United States v. Senak*, 477 F.2d 304, 306 (7th Cir. 1973) (citing *United States v. Jackson*, 235 F.2d 925, 927 (8th Cir. 1956)); *Gomes v. City of Los Angeles*, 2018 WL 4945691, at *2 (C.D. Cal. Oct. 10, 2018).

## B.   Due Process Requires Fair Notice

The Fifth Amendment's Due Process Clause forbids enforcement of a criminal statute that "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). "To make the warning fair, so far as possible the line" demarcating criminal conduct "should be clear." *United States v. Bass*, 404 U.S. 336, 348 (1971) (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)).

Typically, the constitutionally required fair notice is derived from the criminal statute itself. *See F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained 'fails to provide a person of ordinary intelligence fair notice of what is prohibited'" (quoting *Williams*, 553 U.S. at 304)); *Rabe v. Washington*, 405 U.S. 313, 315 (1972) (per curiam) ("To avoid the constitutional vice of vagueness, it is necessary, at a minimum, that a statute give fair notice that certain conduct is proscribed"). Noting this principle in a prosecution under Section 242, the Supreme Court held, "[A]lthough clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute [citations], due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope [citations]." *United States v. Lanier*, 520 U.S. 259, 266 (1997).

"[A] fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle*, 283 U.S. at 27; *see also United States v. Aguilar*, 515 U.S. 593, 600 (1995) (courts "have traditionally exercised restraint in assessing the reach of a

3

federal criminal statute . . . out of deference to the prerogatives of Congress"); *United States v. Bass*, 404 U.S. 226, 348 (1971) ("[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity"). "The rule reflects . . . 'the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should'." *United States v. R.L.C.*, 503 U.S. 291, 309 (1992) (citations omitted).

### C.   Section 242 Failed to Provide Shaw Fair Notice That His Alleged Conduct was Conducted "Under Color of Law"

#### 1.   The "Totality of the Circumstances" Test Employed by the Courts Is Inherently Vague

An essential element that the government must prove in a Section 242 prosecution is that the defendant was acting "under color of law" in performing the alleged misconduct. *See, e.g., United States v. Price*, 383 U.S. 787, 793–94 (1966). The Supreme Court has described "under color of law" as a "loose and vague phrase." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 213 (1970). "One might classify [§ 242] as the ultimately vague criminal statute." *Trs. of Indiana Univ. v. Curry*, 918 F.3d 537, 542 (7th Cir. 2019).

"The traditional definition of acting under color of state law requires that the defendant . . . have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941); *see also id.* at 49–50 ("It is firmly established that a defendant . . . acts under color of state law when he abuses the position given to him by the State"). "[T]here is no bright line test for distinguishing personal pursuits from activities taken under color of law." *Hoit v. Trans. Auth.*, 808 F. App'x 41, 46 (2d Cir. Mar. 30, 2020)) (quoting *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994)).

Rather, the question of whether conduct is undertaken under "color of law" is an "intensely fact-specific" inquiry, *Parilla-Burgos v. Hernandez-Rivera*, 108 F.3d 445, 449 (1st Cir. 1997), which involves "a process of 'sifting facts and weighing circumstances' which must lead us to a correct determination." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000) (quoting *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974)); *see also Kile v. Betuel*, 973 F.Supp. 1070, 1074 (S.D. Ga. 1997) ("A detailed inquiry into the facts is required to determine whether, in a given situation, a police officer acts under

color of state law, or acts as a private individual"). Stated another way, the "color of law" inquiry is dependent upon the "totality of the circumstances," *Parilla-Burgos*, at 449 (citing *Martínez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995)), a test which has been described by the Supreme Court and other courts as inherently vague. *See, e.g., Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 66 & n.11 (1998) (determining that "totality of circumstances" test is vague and "seriously undermines the interest in certainty") (citing *Seal Flex, Inc. v. Athletic Track & Court Const.*, 98 F.3d 1318, 1323 n.2 (Fed. Cir. 1996)); *Seal Flex, Inc.*, 98 F.3d at 1323 n.2 ("The standard of the totality of the circumstances has been criticized as unnecessarily vague") (citing *The Advisory Commission on Patent Law Reform: A Report to the Secretary of Commerce* (1992)); *Smith v. Boyle*, 144 F.3d 1060, 1063 (7th Cir. 1988) (referring to "totality of the circumstances" test as a "notably vague standard"); *Manuel v. Sutton*, 2017 WL 8185851, at *5 (C.D. Cal. Dec. 11, 2017) ("simply instructing the jury to consider the 'totality of the circumstances'" "arguably [is] too vague to provide guidance") (quotation omitted). "Given the intensely fact-specific nature of the [color of law] analysis . . . it [is] unremarkable that none of the cases cited by the plaintiffs are so factually similar to this case as to persuade us to adopt the particular outcome the plaintiffs desire [that defendant was acting under color of law]." *Parilla-Burgos*, at 450.

### 2. Judicial Glosses on the Phrase "Under Color of Law" Do Not Provide Fair Notice Either

In an attempt to give the phrase "under color of law" a fairly ascertainable meaning, the Supreme Court held in *United States v. Classic*, 313 U.S. 299, which involved state election officials who allegedly falsely counted and certified the ballots of voters cast in the Democratic primary congressional election, *id.* at 308–09, that an individual acts "under color of law" only when he or she engages in "[m]isuse of power, possessed by virtue of state law and *made possible only because the wrongdoer is clothed with the authority of law*." *Id.* at 325–26 (emphasis added) (citing *Ex parte Virginia*, 100 U.S. 339, 346 (1879); *Home Tel. & Tel. Co. v. Los Angeles*, 227 U.S. 278, 287 (1913); *Hague v. C.I.O.*, 307 U.S. 496, 507, 519 (1939)). The Court held in *Classic* that the defendants acted "under color of law" solely because their actions "were committed in the course of their performance of duties under the Louisiana statute requiring

1  them to count the ballots, to record the result of the count, and to certify the result of the election."

2  *Classic*, at 325–26. The defendants' malfeasance would not have been possible but for their official

3  authority to count the ballots and certify the election. *See id.*

4      Three years later, in *Screws v. United States*, 325 U.S. 91 (1944), the Supreme Court attempted to add

5  further judicial gloss to the elusive phrase "under color of law." *Screws* involved three law enforcement

6  officers who arrested a black man and beat him to death, thereby violating his constitutional right not to be

7  deprived of life without due process of law. *Id.* at 92–93. Emphasizing that the defendants "were officers

8  of the law who made the arrest" and were authorized to do so under Georgia law, the Court held that the

9  defendants acted "under color of law," so their conduct came within the purview of the statute. *Id.* at

10  107–08. The *Screws* Court held its facts to be indistinguishable from those in *Classic*, since in both cases

11  the "officers of the State were performing official duties; in each the power which they were authorized to

12  exercise was misused." *Id.* at 110. *Screws* held that "acts of officers in the ambit of their personal pursuits

13  are plainly" not conduct under color of law; however, "[a]cts of officers who undertake to perform their

14  official duties are included whether they hew to the line of their authority or overstep it." *Id.* at 111; *see*

15  *also United States v. Giordano*, 260 F. Supp. 2d 477, 484 (D. Conn. 2002). Put another way, "under color

16  of law" means under "pretense" of law, and does not connote that the law actually authorizes the conduct.

17  *Screws*, at 111; *Johnson v. Phillips*, 664 F.3d 232, 239–40 (8th Cir. 2011) ("color of law" element satisfied

18  if "if the defendant acts or purports to act in the performance of official duties, even if he oversteps his

19  authority and misuses power"). The Supreme Court in *Screws* emphasized that "[w]e are not dealing here

20  with a case where an officer not authorized to act nevertheless takes action." *Screws*, at 111.

21      Following *Classic* and *Screws*, courts have consistently held that an officer of the state acts "under

22  color of law" only where he engages in a "[m]issue of power, possessed by virtue of state law and made

23  possible only because the wrongdoer is clothed with the authority of law." *See, e.g., Johnson v. Knowles*,

24  113 F.3d 1114, 1117 (9th Cir. 1997) (assemblyman's actions in securing ouster of homosexual members of

25  county central committee of political party were not undertaken under color of state law where they were

26  not related to the performance of his duties as public official; the mere fact that the prestige of his office

27  may have enhanced his influence over committee was not enough to transform his actions into state

28  action); *Townsend v. Moya*, 291 F.3d 859, 861–62 (5th Cir. 2002) (corrections officers who cut inmate

while engaging in horseplay did not act under color of law); *Hughes v. Halifax Cnty. Sch. Bd.*, 855 F.2d 183, 186–87 (4th Cir. 1988) (county employees who hung noose on county property to harass plaintiff did not act under color of law); *Sanchez v. California*, 90 F.Supp.3d 1036, 1065–66 (E.D. Cal. 2015) (corrections officer who sexually harassed coworker did not act under color of law). "The acts of private parties who possess no power or authority under state law are not acts 'under color of' state law within the meaning of Section 242." *United States v. Cooney*, 217 F.Supp. 417, 419 & 422 (D. Colo. 1963) (citing *Screws*, 325 U.S. at 111); *see also Cassady v. Tackett*, 938 F.2d 693, 695 (6th Cir. 1991) (defendant acted under color of state law because he had the authority to carry a gun in the jail only because he was the elected jailer of Johnson County); *Giordano*, 260 F. Supp. 2d at 485 (Mayor acted under color of law when he sexually abused two minors; noting the sexual abuse of the minors was made possible only by virtue of the defendant's official position as Mayor, since he carried an official badge, drove an unmarked police car, and used cellular telephones provided by the City to coerce and force the minors to engage in sexual acts).

Two common themes run throughout these cases. *First*, in each of the cases, the defendants were public officials with the authority to *enforce the law*; i.e., members of the executive branch. *See Classic* (state election officials); *Screws* (law enforcement officers); *Cooney* (same); *Giordano* (Mayor). *Second*, and relatedly, the defendants' wrongful conduct was "made possible only because the wrongdoer [was] clothed with the authority of law." *Classic*, 313 U.S. at 325–26; *see also Giordano*, 260 F. Supp. 2d at 485.

This is because those authorized to enforce the law, such as the defendants in *Classic*; *Screws*; *Cooney*; and *Giordano*, are necessarily "clothed with the authority of law" by virtue of their executive positions of authority, and when they misuse that authority, prosecution under Section 242 is proper. *Cf, e.g., Classic*, 313 U.S. at 325–36; *Screws*, 325 U.S. at 109–11 (police used their authority to beat and arrest victim); *Cooney*, 217 F. Supp. at 422 (defendant officers used their authority to enter and search victim's home); *Giordano*, 260 F. Supp. 2d at 484–85. However, by sharp contrast, "[m]ere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312,

319–20 (1981)); *Johnson v. Knowles*, 113 F.3d at 1117 ("[A]ll actions of a government official are not, simply by virtue of the official's governmental employ, accomplished under the color of federal law") (quoting *Laxalt v. McClatchy*, 622 F.Supp. 737, 746 (D. Nev. 1985)).

### 3. The Attributes of Conduct that Courts Have Held Constitute "Under Color of Law" are Absent Here

Given the attributes of conduct that the courts have found to be "under color of law," Shaw could not have had fair notice that he, as an athletic trainer, was so acting. Aside from the bare fact of Shaw's employment by an agency of state government (a status he shares with approximately 4.6 million other U.S. residents, *see* Aubrey Watson, Bureau of Labor Statistics, *Employment and Wages in State and Local Government,* https://www.bls.gov/spotlight/2021/occupational-employment-and-wages-in-state-and-local-government/home.htm (last visited September 19, 2022)), none of the additional factors necessary to transform his conduct into that conducted "under color of law" describe Shaw's conduct as alleged in the Information.

*First*, there is no allegation that Shaw told the victims that he had the authority to engage in the illegitimate touchings alleged. *Cf. United States v. Tarpley*, 945 F.2d 806, 808 (5th Cir. 1991) ("At several points during [the assault, defendant] claimed to have special authority for his actions by virtue of his official status. He claimed that he could kill [victim] because he was an officer of the law"); *Bennett v. Pippin*, 74 F.3d 578, 583 (5th Cir. 1996) (sheriff told the victim he could do as he pleased because he was the sheriff; "explicit invocation of governmental authority constituted a real nexus between the duties of the Sheriff and the rape").

*Second*, Shaw did not display, nor could he have displayed, an official badge. *Cf. Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839–40 (9th Cir. 1996) (off-duty officer did not act under color of law when he attempted to rob victims at their homes, in part because officer did not wear a badge); *Tarpley*, 945 F.2d at 808 (relying on display of badge to conclude that defendant acted under color of law); *Giordano*, 260 F. Supp. 2d at 484–85 (relying on Mayor's use of an official badge to find that he acted under color of law); *Abdi v. Lovell*, 2009 WL 976503, at *5 (D. Ariz. Apr. 9, 2009) (drunken off-duty police officer displayed badge and identified self as police officer); *cf. Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997) ("off-duty police officers who flash a badge or otherwise purport to exercise official authority

generally act under color of law"); *Hughes v. Halifax Cnty. Sch. Bd.*, 855 F.2d at 186–87 ("The judges were figuratively and literally clothed in state power, and the officers were acting behind badges. Gregory and Lloyd were wearing, at best, county coveralls. The indicia of state authority just isn't the same").

*Third*, there is no allegation that Shaw used his official position to detain the alleged victims, as it appears all of the alleged assaults took place in a training room open to SJSU athletes, trainers and other personnel, from which student-athletes easily could come and go as they pleased. *Cf. Lee ex rel. Lee v. Borders*, 764 F.3d 966, 969 (8th Cir. 2014) (kitchen worker, a state employee, exercised his authority over plaintiff, a conserved resident of the state-run home, by offering her food then dragging her to the restricted area of the kitchen where he could rape her; defendant "was in charge of the kitchen at the time, so he controlled who entered it and remained there"); *United States v. Colbert*, 172 F.3d 592, 596 (8th Cir. 1999) (police officer assaulted inmate in a restricted area of the jail that he could only access because of his position as a police officer). And the alleged victims here were not minors incapable of either actual or apparent consent, but adults. *Cf. Giordano*, 260 F. Supp. 2d at 485 (sexual abuse of children under the age of 12).

*Fourth*, there is no allegation that Shaw acted in concert with anyone in committing the acts alleged. *Compare White v. City of Greensboro*, 532 F.Supp.3d 277, 310 (M.D.N.C. 2021) (defendant officer did not act under color of law where he did not summon other officers for assistance in searching the victim's house); *Galliano v. Borough of Seaside Heights*, 2007 WL 979850, at *11 (D.N.J. March 30, 2007) (holding that defendant did not act under color of law; "Lutes did not enlist the aid of any other officers as did the deputy in *Tarpley*") *with Tarpley*, 945 F.2d at 808 (relying on presence of second officer and display of badge to conclude that defendant acted under color of law); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 469 (5th Cir. 2010) ("because '[t]he presence of police and the air of official authority pervaded the entire incident,' we concluded that [the defendant in *Tarpley*] acted under color of law").

Because the gravamen of the "under color of law" inquiry is "whether the victim was intimidated by the perpetrating officer's official status," *see T.G. v. Bd. of Cnty. Comm'rs of Cnty. of Rio Arriba*, 2020 WL 6075662, at *17 (D.N.M. Oct. 15, 2020)), courts consider whether the defendant's conduct "had the purpose and effect of influencing the behavior of others," *Anderson v. Warner*, 451 F.3d 1063, 1069 (9th Cir. 2006) (citing *Van Ort v. Estate of Stanewich*, 92 F.3d at 839–40. No such influence is alleged here,

9

and the factors ordinarily present for conduct to be held "under color of law" are absent. *Compare Escalante v. City & Cnty. of Honolulu*, 2018 WL 1748110, at *4 (D. Haw. Apr. 11, 2018) (off-duty officer did not act under color of law when he assaulted victim after traffic accident: "The Complaint clearly states that Duarte was off-duty at the time of the assault, and it includes no allegations whatsoever that he used, attempted to use, or pretended to use his status as a police officer -- let alone that any such action influenced Escalante or any witness") (citing *Anderson*, at 1068–69)) *with Vang v. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991) (state employee acted under color of law when raping Hmong immigrants because victims were in "awe of government officials").

### D.   Because Shaw Held No Power Over the Alleged Victims, He Was Not Afforded Fair Notice that Section 242 Applied to Him

Where the power dynamic described by the courts in *Classic, Screws, Cooney*, and *Giordano* is absent, so is the requisite coercive influence. Although the Ninth Circuit has not adopted a pattern jury instruction for a violation of Section 242, sister Circuits' pattern instructions require the government to prove that a defendant abused or misused *power* he was granted over others as an official of the state. *See* Eleventh Circuit Pattern Jury Instructions, Criminal Cases (2016 rev.), Instruction O8 ("[a]n unlawful act under color of state law occurs when a person has power only because that person is an official, and that person does acts that are a misuse or abuse of that power"); Tenth Circuit Criminal Pattern Jury Instructions (2021 ed.), Instruction 2.17 ("'Under color of law' . . . . means that the defendant acted in his official capacity or else claimed to do so, but abused or misused his power by going beyond the bounds of lawful authority"); Eighth Circuit Model Jury Instructions (2021 ed.), Instruction 6.18.242 (same); *see also supra* at 7–8. But Shaw had no such power at his disposal to misuse or abuse. He served as an athletic trainer and administrator, to whom adult student-athletes went voluntarily (or decided not to) for physical therapy, and therefore lacked any power to compel *or even request* student-athletes to submit to physical treatment; to retaliate against them if they did not; or to affect such intangibles as scholarships, playing time, or grade assignments.

Where the alleged criminal conduct was not "made possible only because the wrongdoer is clothed with the authority of law," *Classic*, 313 U.S. at 325–26, and therefore could just as easily have been accomplished by a private actor, that conduct is not performed "under color of law" for purposes of

Section 242. *See, e.g., Gritchen v. Collier*, 254 F.3d 807, 814 (9th Cir. 2001) (officer who threatened to sue motorist during traffic stop did not act under color of law; "by threatening to sue (or suing) for defamation is no different from what any defamation plaintiff does when he or she threatens to sue"); *Almand v. DeKalb Cnty., Georgia*, 103 F.3d 1510, 1513 (11th Cir. 1997) (holding that defendant police officer did not act under color of law because "he was no different than any other ruffian"; "any thug or burglar could have committed the same violent acts"); *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1268 (11th Cir. 2012) (holding that correctional officer did not act under color of law when he allegedly beat plaintiff: "Any other angry parent with a firearm in the house could have done what [defendant] did"); *see also Kern v. City of Rochester*, 93 F.3d at 43 (holding that a defendant who sexually harassed and assaulted his secretary did not do so under color of state law, even though the relevant events occurred in an office where the defendant regularly conducted city business as a city employee). Here, the acts alleged could just as easily have been committed by a private chiropractor, masseur or athletic trainer as by a state employee.

Because of the absence of state power accorded by virtue of his employment, Shaw was not given constitutionally adequate fair notice that he was acting "under color of law" for purposes of Section 242 simply by virtue of his employment with SJSU. ECF 1 ¶ 1; *cf., e.g., Hoit v. Trans. Auth.*, 808 F. App'x at 46) (defendant mechanic did not act under color of law where he exercised no supervisory authority over victim); *Pitchell v. Callan,* 13 F.3d 545, 548 (2d Cir. 1994) (finding off-duty police officer who, while drunk in his own home used his own personal weapon to shoot a guest, did not act under color of state law, since he did not invoke the authority of the police department); *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (holding that assault by on-duty police chief at police station was not under color of law because the altercation arose out of a personal dispute; the defendant neither arrested not threatened to arrest the plaintiff). Shaw had no way of predicting that his mere employment at a state university would subject him to federal criminal sanctions under Section 242, and certainly not in a way that "the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle*, 283 U.S. at 27.

### E.   The Government's Novel Construction of Section 242

The Supreme Court has declared that "a criminal conviction ought not to rest upon an interpretation reached by the use of policy judgments rather than by the inexorable command of relevant language." *See M. Kraus & Bros., Inc. v. United States*, 327 U.S. 614, 626 (1945); *United States v. Nichols*, 784 F.3d 666, 668 (10th Cir. 2015) (Gorsuch, J., dissenting from the denial of rehearing *en banc*) ("[i]f the separation of powers means anything, it must mean that the prosecutor isn't allowed to define the crimes he gets to enforce"); *see also Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 S.Ct. 789, 790 (2020) (denial of petition for writ of certiorari) (statement of Gorsuch, J.) ("[o]nly the people's elected representatives in the legislature are authorized to 'make an act a crime'").

Underscoring the shifting sands of the government's position, the Department's own policy materials note that proper defendants under Section 242 act under color of law only "when they *wield power vested by a government entity*. Those prosecuted under the statute typically include police officers, sheriff's deputies, and prison guards. However, other government actors, such as judges, district attorneys, and other public officials, can also act under color of law and can be prosecuted under this statute." *Statutes Enforced By The Criminal Section, U.S. Dep't Of Just.*, https://www.justice.gov/crt/statutes-enforced-criminal-section (last updated August 31, 2022) (emphasis added); *see also* Fara Gold, *Investigating and Prosecuting Sexual Misconduct Committed by Law Enforcement*, 35 <u>ABA Criminal Justice</u> (Winter 2021) 10, 11 ("The actions of police officers, tribal officers, corrections officers, probation officers, judges, prosecutors, prisoner transport officers and other public officials may all fall under the ambit of 18 U.S.C. § 242").

In recent years, the Supreme Court has consistently warned the government about prosecutions based upon overly expansive constructions of criminal statutes. In *Bond v. United States*, 572 U.S. 844 (2014), for example, the government prosecuted a wife who attempted to use toxic chemicals against her husband's lover under the Chemical Weapons Convention Implementation Act of 1998. *Id.* at 848, 852–54. The Supreme Court unanimously held that the statute at issue was not meant to apply to Bond's conduct -- an act of romantic jealous revenge -- and that it was "incumbent upon the federal courts to be certain of Congress' intent" to "assure[] that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." *Id.* at 858–60 (citations omitted); *see also id.*

at 871–72 (Scalia, J., concurring in judgment) (criminal statutes must be interpreted with a "realistic assessment [] of congressional intent"). Similarly, in a unanimous decision in *Kelly v. United States*, 140 S.Ct. 1565 (2020), the Supreme Court reversed convictions arising out of the "Bridgegate" scandal, finding that the government's interpretation of the federal fraud statutes at issue threatened a "sweeping expansion of federal criminal jurisdiction." *Id.* at 1574 (quoting *Cleveland v. United States*, 531 U.S. 12, 24 (2000)).

Indeed, the Supreme Court has become increasingly vocal against executive slight-of-hand in federal criminal prosecutions. As Justice Gorsuch pointedly noted in a recent statement accompanying the denial of a petition for a writ of certiorari, the Supreme Court has "never held that the Government's reading of a criminal statute is entitled to any deference." *Guedes*, 140 S.Ct. at 790 (statement of Gorsuch, J.) (quoting *United States v. Apel*, 571 U.S. 359, 369 (2014)). When "[t]he law hasn't changed, only an agency's interpretation of it," courts need not defer to "bureaucratic pirouetting." *Id.* at 790–91.

The government's tin ear to the Supreme Court's rebukes has ensured that its unilateral attempts to expand the scope of criminal statutes have become a staple of the Supreme Court's docket, as well as the subject of regular commentary from the Justices. These cases stand out both for their impact and their unusual presence on the Supreme Court's very limited docket, since such cases often do not fit the traditional mold of either arising out of a split of authority among the circuit courts of appeal or presenting a holding that is contrary to established Supreme Court precedent. *See* U.S. Supreme Court Rule 10. There has been good reason for the Court to grant review in such cases, however, since these prosecutions present serious due process notice concerns; risk opening the floodgates to more prosecutions of the same ilk; and give prosecutors overwhelming leverage at the negotiating table.

Thus, as illustrated by the instant prosecution, the government is seizing upon the vagueness of Section 242 to create a whole new category of federal criminal offenses never before countenanced by Congress or the courts. "The Ninth Circuit has noted [that] '[w]hether a government employee is acting under color of law is not always an easy call, especially when the conduct is novel.'" *Mallar v. City of Adelanto*, 2013 WL 8148647, at *5 (C.D. Cal. July 24, 2013) (quoting *Gritchen v. Collier*, 254 F.3d at 814). Here, the government has seized upon the vagueness of Section 242, and its inherently subjective "totality of the

circumstances" test for "under color of law," to expand the statute's scope to reach conduct that Congress never intended to fall within its ambit, and that people of ordinary intelligence would not know lies within its reach.

Such a sweeping expansion of federal jurisdiction to criminalize sexual misconduct between adults in the workplace, a role traditionally left to the states, underscores the unconstitutional vagueness of Section 242. *Cf. Guinther v. Wilkinson*, 679 F.Supp. 1066, 1071 (D. Utah 1988) (statute defining "sexual activity" for purposes of prostitution offense is vague because it "is susceptible to mischievous subjective application"); *cf. Van Buren v. United States*, 141 S.Ct. 1648, 1661 (2021) ("[T]he Government's interpretation of the [Computer Fraud and Abuse Act] would attach criminal penalties to a breathtaking amount of commonplace computer activity"); *Kelly v. United States*, 140 S.Ct. at 1574 (reversing conviction for wire fraud; held, "not every corrupt act by state or local officials is a federal crime" and to do so there would be a "sweeping expansion of federal criminal jurisdiction") (quoting *Cleveland v. United States*, 531 U.S. at 24); *McDonnell v. United States*, 579 U.S. 550, 567–77 (2016) (narrowly interpreting "official act" in federal bribery statutes and expressing concerns about overbroad readings of criminal laws); *see also Skilling v. United States*, 561 U.S. 358, 411 (2010) ("honest-services fraud does not encompass conduct more wide ranging than the paradigmatic cases of bribes and kickbacks, we resist the Government's less constrained construction absent Congress' clear instruction otherwise"); *United States v. Aguilar*, 515 U.S. at 600 ("We have traditionally exercised restraint in assessing the reach of a federal criminal statute").

Moreover, the government's construction of Section 242 would open the floodgates that lead to this Court. The substantive Due Process Clause's right to bodily integrity protects against not only sexual but "serious physical assaults." *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997).) There are approximately 4.6 million employees of state government in the United States, *supra* at 10, each of whom, under the government's theory, has a duty to act "in compliance with the United States Constitution." As such, under the government's view as expressed in the Information, each of those employees could be haled before this Court if they commit any sexual or "serious physical" assaults on any other person -- or not -- depending on the Department's exercise of its considerable discretion. Certainly that is the government's planned travel route. *See* Fara Gold, *Investigating and Prosecuting Law Enforcement Sexual*

*Misconduct Cases*, <u>United States Attorneys' Bulletin</u> (Jan. 2018) at 78 (seeking to "spread[] the word" and "increase awareness of [the Department's] jurisdiction, one case at a time" of its authority to prosecute any state employee who engages in sexual misconduct under § 242).

Indeed, commentators have opined upon the need for Congress to amend Section 242 to more precisely define its scope and to provide adequate due process notice as to what conduct the statute prohibits. *See, e.g.,* Taryn A. Merkl, *Protecting Against Police Brutality and Official Misconduct: A New Federal Criminal Civil Rights Framework*, Brennan Center for Justice at New York University School of Law (April 29, 2021) at 5 (noting § 242 "does not make clear to public officials . . . what *actions* they cannot take" (emphasis in original) and decrying the statute's "vague and expansive framing and resulting lack of clarity about what conduct is illegal"); *see also id.* at 7 ("Because § 242 and § 1983 essentially cross-reference the entire body of rights protected or guaranteed by the Constitution and laws of the United States, the protection is so broad that it is difficult to enforce in a manner consistent with due process, making courts hesitant to interpret those rights broadly"); *see also Screws*, 325 U.S. at 105 ("[I]f Congress desires to give [§ 242] wider scope, it may find ways of doing so").

Still, no such Congressional broadening or clarification of the statute has been forthcoming. A recent bill that passed the House, but stalled in the Senate, would have amended the criminal intent required for conviction under Section 242 from the "willfully" standard set by the *Screws* Court and its 75-plus years of progeny to a "knowingly or recklessly" standard, and would have specifically prohibited and defined "sexual acts under color of law." George Floyd Justice in Policing Act of 2021 (H.R. 1280, 117th Cong. (2021); *see id.* at §§ 101, 402, 403. The text of Section 242 has indeed remained essentially unchanged since the term "willful" was added to make the section "less severe" in 1909. *See Screws*, 325 U.S. at 100, citing Criminal Code of 1909, 35 Stat. 1092; 43 Cong. Rec., 60th Cong., 2d Sess., p. 3599. Thus, as applied to Shaw, the statute remains unconstitutionally vague.

### F.   The Novelty of this Prosecution Underscores Section 242's Susceptibility to Arbitrary Enforcement

In addition to precluding the judicial branch's punishment of persons who were deprived of fair notice that their conduct was proscribed, due process "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and

judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018); *see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983) ("The more important part of the vagueness doctrine is not actual notice, but the other principal element of the doctrine -- the requirement that a legislature establish minimal guidelines to govern law enforcement"). This principle "is a corollary of the separation of powers -- requiring that Congress, rather than the executive . . . . define what conduct is sanctionable and what is not." *Sessions*, at 1212.

As noted *supra,* the government has brought what appears to be the first-ever prosecution under Section 242 against a public employee where the alleged victims were adults; consented at the time to the acts comprising the alleged deprivation of their civil rights; were under no obligation, legal or otherwise, to submit to any physical contact with the defendant; and were not subject to the custody, control or influence of the defendant. And this case appears to be the tip of the spear -- the Department's prosecutor in this action has made clear an intention to expand the reach of Section 242 via executive fiat to cover a broader array of sexual misconduct cases. *See* Fara Gold, *Investigating and Prosecuting Sexual Misconduct Committed by Law Enforcement*, 35 ABA Criminal Justice (Winter 2021) (arguing for more robust investigation of sexual misconduct offenses under § 242 and for expansion of federal jurisdiction over such cases).

Based upon the foregoing, this Court should dismiss the Information for failure to state a claim under Fed. R. Crim. P. 12(b)(3)(B)(v).

## MOTION FOR A BILL OF PARTICULARS

In the alternative, Defendant Scott Shaw respectfully moves this Court, pursuant to Federal Rule of Criminal Procedure 7(f), to direct the government to supply the following particulars in reference to the Information filed in the above-entitled case:

1. As to Counts One through Six, inclusive, to specify how it intends to prove at trial that Mr. Shaw acted "under color of law."

2. As to Counts One through Six, inclusive, to specify whether and how it intends to prove at trial that the acts alleged were "without [each victim's] consent"; specifically, whether it intend to prove at trial that

the alleged victims: (a) lacked capacity to consent; (b) expressed any lack of consent, explicitly or implicitly, to Shaw; and/or (c) did not consent based upon a failure of "informed consent" to the touchings alleged.

3. As to Counts One through Six, inclusive, to specify whether and how it intends to prove at trial that the acts alleged were committed "without a legitimate purpose."

4. As to Counts One through Six, inclusive, to specify where the acts charged are alleged to have taken place; specifically: (a) whether they took place in an area closed or restricted to the general public or the student population at SJSU; (b) whether they took place in an area from which the alleged victims were restrained in any way from leaving; and (c) whether they took place on the grounds of SJSU, or elsewhere.

## MEMORANDUM IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS

Federal Rule of Criminal Procedure 7(c)(1) requires that an Information contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Federal Rule of Criminal Procedure 7(f) provides that the Court may direct the filing of a bill of particulars upon motion by the defendant. The purpose of a bill of particulars is to apprise the defendant of the nature of the charges in such a way as to ensure that he: (1) understands the charges; (2) can prepare a defense; (3) can avoid prejudicial surprise at trial; and (4) can possibly be protected against retrial for the same offense. *United States v. Butler*, 822 F.2d 1191 (D.C. Cir. 1987).

"The proper office of a bill of particulars in criminal cases is to furnish to the defendant further information respecting the charge stated in the indictment when necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial," and when necessary for those purposes is to be granted even where it requires "the furnishing of information which in other circumstances would not be required because evidentiary in nature," and an accused is entitled to it "as of right." *United States v. U.S. Gypsum Co.*, 37 F.Supp. 398, 402–403 (D.D.C. 1941). "[W]here the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, -- it must descend to particulars.'" *Russell v. United States*, 369 U.S. 749, 765 (1962) (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875)).

Thus, although "an indictment parroting the language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007); *see also Russell*, 369 U.S. at 765 ("An indictment not framed to apprise the defendant 'with reasonable certainty, of the nature of the accusation against him . . . is defective, although it may follow the language of the statute'") (quoting *United States v. Simmons*, 96 U.S. 360, 362 (1877)). Section 242, the "ultimately vague criminal statute," *Trs. of Indiana Univ. v. Curry*, 918 F.3d at 542, is such a statute.

Here, the Information alleges that Shaw was the Head Athletic Trainer and Director of Sports Medicine at SJSU, a public university. ECF 1 ¶¶ 1, 2. He is alleged to have been required to "act in compliance with the United States Constitution" *solely* by virtue of being employed by SJSU. ECF 1 ¶ 3. Each Count charges Shaw with "while acting under the color of law, and acting without a legitimate purpose, touch[ing]" each named victim in a specified intimate area "without her consent, thereby depriving [each named victim] of liberty without due process of law, which includes the right to bodily integrity, a right secured by the Constitution and laws of the United States." ECF 1 ¶¶ 5–10.

### A.   "Under Color of Law"

As discussed *supra,* the Information alleges that Shaw acted under "color of law" simply by virtue of his employment with a state university, yet it is clear that the bare fact of a person's employment by a state agency does not suffice for a violation of Section 242. *See, e.g., Kern v. City of Rochester*, 93 F.3d at 43 (citing *Polk Cnty. v. Dodson*, 454 U.S. at 319–20). The determining factor of whether a government official was acting under color of law is generally "whether there [was] a nexus between the victim, the improper conduct and [the defendant's] performance of official duties." *United States v. Dillon*, 532 F.3d 379, 385–386 (5th Cir. 2008).

Moreover, Shaw apparently held two positions during the time periods alleged in the Information; he was both Head Athletic Trainer and Director of Sports Medicine at SJSU. ECF 1 ¶ 1. The Information provides the defense no notice as to in which capacity Shaw allegedly acted "under color of law"; what "official duties" he held based upon his employment in either position; nor does it alleged any facts

suggesting a nexus between the performance of such duties and the allegedly criminal touchings. These omissions require the defense to guess what "power" Shaw "possessed by virtue of state law" over the named victims, with no established precedent to serve as a guide.

### B.   "Without [] Consent"

The government's discovery in this matter is replete with statements and opinions that speak to the question of whether Shaw failed to obtain from the student-athletes involved what is generally known as "informed consent." As an example, an expert witness on athletic training whom the defense anticipates the government will call at trial has stressed to the government the importance of verbal or written consent before a trainer treats an athlete; the importance of having a "chaperone" during physical contact between a trainer and athlete of different genders; that having a male trainer massage a female athlete for shoulder pain would be "highly unusual and suspicious"; and that draping an athlete during treatment would be "standard practice."

In order to properly prepare a defense, Shaw is entitled to know whether and how the government plans to demonstrate at trial that the treatments involved were undertaken without the alleged victims' consent; that is, whether such proof will be provided by verbal or nonverbal expressions by the victims of their lack of consent; by Shaw's failure to properly explain the procedures to the student-athletes; and/or by Shaw's failure to adhere to certain putative professional "best practices" like draping and chaperoning.

### C.   "Without a Legitimate Purpose"

The Information makes no attempt to provide any definition of the vague non-statutory term "no legitimate purpose." The government would certainly concede that one of the mandatory duties of an athletic trainer at a university is to touch student-athletes' bodies, but makes no attempt to distinguish between "legitimate" and "illegitimate" touchings in the Information, nor to provide any definition as to how those illegitimate touchings would have deprived the named victims of their civil rights. If the government believes it can prosecute Shaw for a violation of a clearly defined federal sex offense statute, with clear statutory definitions, it should do so; if not, the defense is entitled to know how the government intends to delineate the border between the "legitimate" touchings he was employed to do and the "illegitimate" touchings which constitute this prosecution.

### D.   Location of Offenses Alleged

Lastly, the Information provides no details that would guide the defense in determining *where* the alleged touchings took place. While this may not usually be an essential element of pleading, if in the instant case Shaw's alleged actions took place on the grounds of SJSU, or in a secured location accessible only to him, that would be a factor that a jury could consider in determining whether Shaw acted under color of law. *See Lee ex rel. Lee v. Borders*, 764 F.3d at 969; *United States v. Colbert*, 172 F.3d at 596.

### **CONCLUSION**

For all of the foregoing reasons, defendant Scott Shaw respectfully requests that this Court dismiss the Information for failure to state an offense pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v) or, in the alternative, order the government to supply the defense with a bill of particulars sufficient to identify the facts that it believes bring Mr. Shaw's conduct within the proper ambit of Section 242.

Dated: September 26, 2022

Respectfully submitted,

By:   /s/ Sam J. Polverino

Sam J. Polverino, CA Bar No. 87563
Law Offices of Sam J. Polverino
1565 The Alameda, Suite 100
San Jose, CA 95126
Tel: (408) 295-3330
Fax:(408) 971-0478
Email: spolverino@sjlawyer.net

Jeremy D. Blank, CA Bar No. 172571
Law Office of Jeremy D. Blank
1459 18th Street, No. 148
San Francisco, CA 94107
Tel: (415) 710-2728
Fax: (415) 431-2728
Email:  jdb@jeremyblank.com

Attorneys for Defendant
SCOTT SHAW

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on September 26, 2022. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

I certify under penalty of perjury that the foregoing is true and correct.


Dated: September 26, 2022                    By:   /s/ Jeremy D. Blank