UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>  v.<br>SCOTT SHAW,<br>    Defendant. | Case No. 22-cr-00105-BLF-1<br><br>**ORDER DENYING MOTION TO DISMISS AND MOTION FOR BILL OF PARTICULARS** |

Defendant Scott Shaw, an athletic trainer at a public university in California, allegedly touched the breasts and/or buttocks of several women student athletes without their consent and without a legitimate purpose. The United States ("Government") charged Shaw with violating a federal criminal civil rights statute for depriving the student athletes of their right to bodily integrity while acting under color of law.

Shaw filed a motion to dismiss the Information or, in the alternative, for a bill of particulars. ECF No. 31 ("MTD"); *see also* ECF No. 34 ("Reply"). The Government opposes the motion. ECF No. 32 ("Opp."). The Court held a hearing on November 8, 2022. *See* ECF No. 35. For the reasons discussed on the record at the hearing and explained below, the Court DENIES the motions.

**I. BACKGROUND**

On March 10, 2022, the Government filed a Bill of Information in the above-captioned case. ECF No. 1 ("Information"). Defendant Scott Shaw was an athletic trainer at San Jose State University ("SJSU"), a public university and member of the California State University System, from 2006 through 2020. *Id.* ¶¶ 1-2. As alleged in the Information. Shaw touched the breasts and/or buttocks of four students on women's athletic teams at SJSU without their consent and

without a legitimate purpose. *Id.* ¶¶ 4-10. The Government charged Shaw with six counts of violation of 18 U.S.C. § 242 for depriving the four student athletes of their right to bodily integrity without due process of law while acting under color of law. *Id.* ¶¶ 5-10.

On September 26, 2022, Defendant filed a motion to dismiss the Information for failure to state an offense under Federal Rules of Criminal Procedure 7(c)(1) and 12(b)(3)(B)(v) or, in the alternative, for a bill of particulars pursuant to Rule 7(f). *See* MTD.

## II. MOTION TO DISMISS

### A. Legal Standard

Rule 12(b) of the Federal Rules of Criminal Procedure permits "any defense, objection or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *see also United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). Rule 12(b)(3)(B) pertains to alleged defects in the indictment or information and permits a motion to dismiss for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The Court notes that "[i]n ruling on a pretrial motion to dismiss an [information] for failure to state an offense, the district court is bound by the four corners of the [information]" and "must accept the truth of the allegations in the [information] in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citations omitted). A court may decide on a motion to dismiss an information before trial if the motion "involves questions of law rather than fact." *Shortt Accountancy Corp.*, 785 F.2d at 1452.

### B. Analysis

The Government charged Shaw with six violations of 18 U.S.C. § 242 ("Section 242"), which states in relevant part as follows:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year, or both . . . .

18 U.S.C. § 242. "Section 242 is a Reconstruction Era civil rights statute making it criminal to act (1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the

Constitution or laws of the United States." *United States v. Lanier*, 520 U.S. 259, 264 (1997) (citing 18 U.S.C. § 242; *Screws v. United States*, 325 U.S. 91 (1945)). Shaw does not contest that the Information adequately charges that he acted "willfully." *See* MTD. Nor does he challenge that he deprived the victims of rights protected by the Constitution or laws of the United States. *See id.* The right allegedly violated here is the student athletes' right to bodily integrity under the Due Process Clause of the Fourteenth Amendment. Opp. at 2; *see Plumeau v. Sch. Dist. No. 40 Cnty of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (recognizing constitutional right to bodily integrity and to be free from sexual abuse). At issue is the second of these elements: whether Shaw acted under color of law. *See* MTD.

Shaw's arguments center around the concept of fair notice. *See* MTD at 4-16. The Due Process Clause of the Fifth Amendment prohibits enforcement of a criminal statute that "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). The "principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)). The Supreme Court has stated that "although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, . . . due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S. at 266 (citations omitted). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267.

Shaw argues that neither the language of the statute nor "judicial glosses" provided fair notice that he acted under color of law. MTD at 4-8. He attempts to distinguish the facts of his alleged conduct from cases in which courts held a defendant did act under color of law. *Id.* at 7-11. Shaw also argues that this case reflects a novel construction of the statute by the Government and that the novel prosecution shows the statute is susceptible to arbitrary enforcement. *Id.* at 12-16. The Government counters that Shaw had fair warning he was acting under color of law

because the "caselaw reveals that it is clearly established that those who sexually assault students while acting in their capacity as public-school employees act under color of law for purposes of Section 242." Opp. at 8. The Government points to several cases that it argues provided Shaw with adequate warning that his actions were taken under color of law. *Id.* at 8-14. The Government also argues that the policy arguments made by Shaw are "incorrect and irrelevant." *Id.* at 14-15.

        The Court looks at the statute and cases cited by the parties to determine whether Shaw had fair notice that he acted under color of law. First, the Court notes that there need not be an exact case on point, as the Supreme Court has "upheld convictions under . . . [Section] 242 despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Lanier*, 520 U.S. at 269 (collecting cases). Further, the Court recognizes that the phrase "'[u]nder color' of law means the same thing in [Section] 242 that it does in the civil counterpart of [Section] 242, 42 U.S.C. [section] 1983." *United States v. Price*, 383 U.S. 787, 794 n.7 (1966) (citing *Monroe v. Pape*, 365 U.S. 167, 185 (1961)). Thus, *West v. Atkins*, 487 U.S. 42 (1988), a case cited by Defendant, is instructive. *See* MTD at 4. The Supreme Court in *West* stated that "[t]he traditional definition of acting under color of state law requires that the defendant in a [Section] 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "It is firmly established that a defendant in a [Section] 1983 suit acts under color of state law when he abuses the position given to him by the State." *Id.* at 49-50. "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50. These requirements are met in this case, as Shaw "abuse[d] the position given to him by the State." Shaw was exercising his responsibilities pursuant to state law—treating student athletes—when he committed the alleged offenses. He used his access to the student athletes' bodies, which he had because of his state position, to commit the alleged misconduct.

        Similar cases from other courts further establish that Shaw clearly had fair warning that he

4

was acting under color of law. First, several courts have held that employees of public universities acted under color of law when they engaged in misconduct related to their position or duties. *See, e.g.*, *Hayut v. State Univ. of New York*, 352 F.3d 733, 744 (2d Cir. 2003) (public university professor who "misuse[d] [his] authority in the course of performing his duties" acted under color of law); *Reinebold v. Indiana Univ. at South Bend*, No. 3:18-CV-525 DRL-MGG, 2020 WL 7629096, at *2 (N.D. Ind. Dec. 21, 2020) (two athletic directors at public university acted under color of law in making decisions for hiring committee); *Thomas v. Pearl*, 998 F.2d 447, 450 (7th Cir. 1993) (public university basketball coach recording phone calls with a recruit would act under color of law for § 1983 purposes); *Watson v. Richmond Univ. Med. Ctr.*, 412 F. Supp. 3d 147, 165 (E.D.N.Y. 2017) (public university professor involved in alleged employment discrimination acted under color of law). Similarly, courts have held that public school employees who sexually abused students in the course of performing their duties acted under color of law. *W.H. v. Olympia Sch. Dist.*, No. C16-5273 BHS, 2017 WL 4408034, at *3 (W.D. Wash. Oct. 4, 2017) (public school bus driver who abused children while transporting and supervising them acted under color of law because the abuse had "an obvious and real nexus to his obligations and duties as a district employee"); *Hackett v. Fulton Cnty. Sch. Dist.*, 238 F. Supp. 2d 1330, 1356 (N.D. Ga. 2002) (public school teacher who abused student on school property during the school day while the student was under the teacher's authority acted under color of law). The Supreme Court has held that a government-affiliated healthcare professionals who abused those they were treating acted under color of law. *West*, 487 U.S. at 54 (physician employed by state to provide medical services to state prison inmates acted under color of law when undertaking his duties in treating prisoner's injury). And finally, a court has held that a soccer coach at a public university who was acting in his capacity as coach when he allegedly sexually harassed an athlete on his team acted under color of law. *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 701 (4th Cir. 2007).

The language of Section 242 and the case law interpreting the phrase "under color of law" provided Shaw with fair warning that he acted under color of law for purposes of Section 242. Shaw was an employee of a public university, and his alleged misconduct occurred while he was performing the duties that he had by virtue of his state employment. The alleged illegitimate and

5

nonconsensual touching occurred while Shaw was treating the student athletes, which treatment he was carrying out in his role as athletic trainer at SJSU.

### C. Defendant's Other Arguments

Shaw attempts to distinguish the facts of his case from the caselaw. First, he argues that there are "[t]wo common themes" in Section 242 cases that are not present in his case: (1) "the defendants were public officials with the authority to *enforce the law*; i.e., members of the executive branch" and (2) "the defendants' wrongful conduct was 'made possible only because the wrongdoer [was] clothed with the authority of law.'" MTD at 7 (emphasis in original) (quoting *Classic*, 313 U.S. at 325-26; citing *Screws*, 325 U.S. 91; *United States v. Cooney*, 217 F. Supp. 417 (D. Colo. 1963); *United States v. Giordano*, 260 F. Supp. 2d 477 (D. Conn. 2002)). Shaw also argues that he did not have fair warning because certain "attributes of conduct that the courts have found to be 'under color of law'" are not present here. MTD at 8. These attributes are: (1) the defendant told the victim they had the authority to engage in the misconduct; (2) the defendant displayed an official badge; (3) the defendant used their official position to detain victims; and (4) the defendant acted in concert with others. *Id.* at 8-10. The Government counters that none of these "attributes" are necessary for a court to find that an individual acted under color of law. Opp. at 13-14. And the Court agrees. The fact that some of these attributes were present in some cases does not make them *necessary* for a violation of Section 242, or even necessary to have fair warning that conduct is taken under color of law.

Shaw argues that he cannot be charged under Section 242 because he did not have any influence, power, or authority over the victims. MTD at 9-11; Reply at 2-5. He asserts that he could not compel or request that student athletes obtain treatment; he could not retaliate against student athletes who did not get treatment; and he did not have any impact on scholarships, playing time, or grades. *Id.* at 10; *see also* Reply at 5. He argues that because the actions could have been committed by a private party, he should not be subject to Section 242. *Id.* at 10-11. But the cases relied on by Shaw in support of his argument are distinguishable. MTD at 10-11. In several of those cases the defendants committed the misconduct while off duty or off work premises; were engaged in personal disputes; or were engaged in actions unrelated to their duties

as state employees. *See Gritchen v. Collier*, 254 F.3d 807, 812-13 (9th Cir. 2001) (police officer did not act under color of law in pursuing private litigation against an individual he initially encountered through a traffic stop); *Almand v. DeKalb Cnty., Georgia*, 103 F.3d 1510, 1512-15 (11th Cir. 1997) (police officer who broke into apartment by force and raped woman living there did not act under color of law because he gained entry by force, not "by virtue of any authority he might have been given by the state to act as a police officer"); *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265-69 (11th Cir. 2012) (woman employed by a public "boot-camp facility for minors" did not act under color of law when she assaulted, using her work handcuffs and pistol, a young man in her home who had been sleeping with her daughter when she got home from work); *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996) (city employee did not act under color of law in harassing and assaulting his secretary because he worked with her solely as union president, not as a city employee); *Hoit v. Capital Dist. Transp. Auth.*, 805 F. App'x 41, 45-46 (2d Cir. 2020) (mechanic for public transportation authority who assaulted colleague while on duty did not act under color of law because the assault "was a 'personal pursuit' unrelated to [the individual's] duties as a mechanic"); *Pitchell v. Callan*, 13 F.3d 545, 547-48 (2d. Cir. 1994) (police officer who was off duty and used his personal weapon to shoot a guest in his home did not act under color of law); *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (police officer who assaulted family member during a family argument while on duty at police headquarters did not act under color of law). Further, while Shaw may not have controlled whether student athletes came to him for treatment, once he was treating a student athlete, he had physical influence and authority over them by virtue of the duties required of him in his role as an athletic trainer.

Shaw further argues that "[m]ere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." MTD at 7 (quoting *Kern*, 93 F.3d at 43); *see also* Reply at 7. But the Government agrees that state employment is not sufficient to constitute a violation of Section 242; the defendant must have also "used his position in some way to commit the crime." Opp. at 12. The Government further clarifies that it is possible that "an assault committed by a state actor can be too remote from their

7

1  official role to be actionable," but that is not the case here. *Id.* The Court agrees that "mere employment" is not sufficient, but the Court's decision is not based on "mere employment." Instead, as discussed above, Shaw acted under color of law because he used his position and duties to commit the alleged offenses.

Shaw finally argues that this prosecution constitutes a "novel construction" of Section 242 by the Government. MTD at 12-16. He asserts that "the government is seizing upon the vagueness of Section 242 to create a whole new category of federal criminal offenses never before countenanced by Congress or the courts," and he argues that recent Supreme Court cases warn against "prosecutions based upon overly expansive constructions of criminal statutes." MTD at 12-13. He believes the Government's actions "underscore[] the unconstitutional vagueness of Section 242," but he nowhere asks the Court to decide that the statute is unconstitutional. *Id.* at 14. He also argues that the Government's construction of Section 242 in this case would "open the floodgates" on additional similar cases. *Id.* These policy arguments do not change the Court's legal analysis. For the reasons discussed above, Shaw's alleged actions fall within the purview of Section 242, and Shaw had fair warning that this was the case.

The Court DENIES the motion to dismiss the Information for failure to state an offense.

### III. MOTION FOR BILL OF PARTICULARS

#### A. Legal Standard

Federal Rule of Criminal Procedure 7(f) provides that a defendant may move for a bill of particulars before or within fourteen days after arraignment or at a later time if the court permits. Fed. R. Crim. P. 7(f). Whether to grant a motion for a bill of particulars is within the district court's discretion. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). The Ninth Circuit has explained that a bill of particulars serves three functions: "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979). "A defendant is not entitled to know all the *evidence* the government intends to

8

produce but only the *theory* of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (emphases in original). The government may add clarity to its theory via discovery, and "[f]ull discovery also obviates the need for a bill of particulars." *Giese*, 597 F.2d at 1180. "In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *Long*, 706 F.2d at 1054.

### B.     Analysis

Shaw seeks a bill of particulars as to four different items: (1) "how [the Government] intends to prove at trial that Mr. Shaw acted 'under color of law[]'"; (2) "whether and how [the Government] intends to prove at trial that the acts alleged were 'without [each victim's] consent'"; (3) "whether and how [the Government] intends to prove at trial that the acts alleged were committed 'without a legitimate purpose[]'"; and (4) to specify where the alleged acts took place. MTD at 16-17. The Government counters that the Information is not too vague or indefinite, and it provides sufficient detail of the charges. Opp. at 16-17. The Government, noting it provided discovery to Shaw more than six months ago, argues that Shaw is improperly seeking "a preview of the United States' proof at trial." *Id.* at 17. The Government also argues that Shaw's motion is not timely. *Id.* at 16.

The motion for a bill of particulars is timely. Federal Rule of Criminal Procedure 7(f) allows a defendant to move for a bill of particulars "before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). Here, the Court gave leave for Shaw to file the motion for a bill of particulars by September 26, 2022, which he did. *See* ECF No. 28 (scheduling order).

But the Court determines that a bill of particulars is not warranted here. The Information adequately advises Shaw of the charges against him and provides the Government's theory of the case. The information that Shaw seeks in his motion for a bill of particulars gets to the Government's evidence. For example, as to consent, Shaw wants to know whether the Government will prove a lack of consent by verbal or nonverbal expressions by the victims, Shaw's failure to properly explain the procedures, and/or Shaw's failure to follow professional

best practices. MTD at 19. As to legitimate purpose, Shaw asks that the Government tell him how it will "delineate the border" between legitimate and illegitimate touching. *Id.* And as to location, Shaw seeks to know whether the Government will prove the alleged conduct took place in an area closed or restricted to the general public or SJSU student population, in an area from which the victims were restrained from leaving, and/or on the SJSU campus. *Id.* at 17. The briefing indicates that Shaw clearly understands the theory of the Government's case. Now Shaw also wants the Government's evidence, to which he is not entitled. *See Ryland*, 806 F.2d at 942.

The Court also notes that discovery has already taken place. *See* Opp. at 17. The Government has provided Shaw with witness interviews, SJSU records, and audio recordings, among other things. *Id.* As noted by the Ninth Circuit, discovery further obviates the need for a bill of particulars, *Giese*, 597 F.2d at 1180, as the purpose of a bill of particulars is served if the charging document provides sufficient detail of the charges and the Government provides full discovery, *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984).

"[A] bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation. Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation." *United States v. Hsuan Bin Chen*, No. CR 09-110 SI, 2011 WL 332713, at *4 (N.D. Cal. Jan. 29, 2011) (emphasis in original) (quoting *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985)). The Information and discovery disclosures provide Shaw with the requisite minimum amount of information, and the Court thus finds that Shaw is on fair and adequate notice as to the theory of the government's case. Shaw is not entitled to a bill of particulars.

**IV. ORDER**

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss and motion for a bill of particulars.

Dated: November 30, 2022

_____
BETH LABSON FREEMAN
United States District Judge