STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone:    (408) 535-5040
Facsimile:    (408) 535-5081
Email: michael.pitman@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

FARA GOLD
Special Litigation Counsel
Criminal Section, Civil Rights Division
United States Department of Justice

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:22-cr-00105-BLF |
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY |
| v. | |
| SCOTT DEFENDANT, | Hearing:    March 23, 2023 |
| Defendant. | Time:       9:00 a.m. |
| | Place:      San Jose Courthouse, Courtroom 3 – 5th Floor |

The United States respectfully requests that Defendant's "Objection to Government's Proffered Expert Witness Testimony," filed on January 30, 2023 (Doc. 44) (the "Motion") be overruled and that the United States be permitted to call Dr. Cindy Chang and Dr. James Borchers as expert witnesses.

## I.   THE EXPERT WITNESS OPINIONS ARE RELEVANT AND RELIABLE

Defendant has been charged with six counts of violating 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law) for willfully depriving four female student-athletes of their Constitutional fundamental right to bodily integrity when he sexually assaulted them while acting in his capacity as an athletic trainer at San Jose State University ("SJSU").  Specifically, Defendant touched his victims' breasts and/or buttocks under their clothing, without consent and without a legitimate medical purpose.

Pursuant to Fed. R. Crim. Proc. 16(a)(1)(G), on November 28, 2022, the United States notified Defendant of its intent to call the following two expert witnesses in its case-in-chief or on rebuttal:

- Dr. Cindy Chang, M.D., Clinical Professor of Orthopedic Surgery at the University of California, San Francisco, serves as a primary care sports medicine physician, and has been the Lead Medical Consultant for Athletic Training Services at Benioff Children's Hospital Oakland's Sports Medicine Center for Young Athletes since 2015. Dr. Chang previously served as Head Team Physician for the University of California, Berkeley, for more than a decade beginning in 1995.

- Dr. James Borchers, M.D., Professor of Clinical Family Medicine/Sports Medicine for the Department of Family Medicine, The Ohio State University, College of Medicine, serves as the Chief Medical Officer for the Big Ten Conference and as the President and Co-founder for the U.S. Council for Athletes' Health, a non-profit organization dedicated to providing expert medical support to athletes and sports organizations. Dr. Borchers previously served as Head Team Physician for the Ohio State University Athletic Department, and as the Medical Director of the Athletic Training Program at the Ohio State University School of Health & Rehabilitation Sciences.

Both experts have prepared written reports (attached to the Motion as Exhibits 2 and 3) concluding that the "treatments" Defendant performed on his victims were inconsistent with any legitimate medical practice, and that Defendant ignored basic industry-standard procedures, such as securing informed consent before touching female athletes' breasts.

Both experts are highly qualified to opine on the treatment performed by athletic trainers. Their testimony will assist the jury in understanding the evidence and determining a fact in issue, and their opinions are relevant, reliable, and admissible under Fed. R. Evid. 702. *See also Kumho Tire Co. v.*

1    *Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993);

2    *United States. v. Vallejo,* 237 F.3d 1008, 1019 (9th Cir. 2001) (Rule 702 requires expert testimony to be

3    both "relevant and reliable."); *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (holding that the

4    relevancy hurdle is a low one to meet). The Motion's arguments to the contrary are not well taken,

5    should be rejected entirely, and the United States should be permitted to call these experts as witnesses.

6    ## II.    THE EXPERTS ARE QUALIFIED TO OPINE ABOUT DEFENDANT'S CONDUCT

7         The Motion objects to Dr. Chang and Dr. Borchers as expert witnesses on the basis that each

8    expert opines about the state of mind of Defendant's victims. But the experts neither do so in their

9    reports nor does the United States intend to call them for that purpose. The United States does not need

10    to call experts in that regard because the victims will testify about Defendant's conduct and their

11    reactions as he sexually assaulted them.

12         Drs. Chang and Borchers reviewed evidence of Defendant's conduct, including the victims'

13    statements, as appropriate under Fed. R. Evid. 703 which permits the review of hearsay, among other

14    materials. *United States v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975) (experts synthesize primary source

15    material, be it hearsay or not). As a result, their reports discussed the victims' reactions to Defendant's

16    conduct. The Motion seizes on those discussions and mischaracterizes them as the experts' "opinions"

17    as a basis for exclusion. But the experts' opinions are not about the victims' reactions. Their opinions

18    are about Defendant's conduct, and whether such conduct was consistent with legitimate medical

19    treatment for the injuries that the victims sustained.

20         Such opinion testimony is relevant and admissible because in order to prove that Defendant

21    violated the victims' fundamental right to bodily integrity, the United States must establish that

22    Defendant's conduct was without a legitimate medical purpose. To be admissible as expert testimony,

23    "the subject matter at issue must be beyond the common knowledge of the average layman." *United*

24    *States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002); *United States v. Hanna*, 293 F.3d 1080, 1086 (9th

25    Cir. 2002). Medical treatment is beyond the common knowledge of the average layman. To that point,

26    many of Defendant's victims assumed that despite their misgivings about Defendant's conduct,

27    Defendant must have been legitimately touching their breasts because he was an athletic trainer, i.e. he

28    was ostensibly an expert. And for those victims who did question him, Defendant condescendingly

dismissed them because he was the "head athletic trainer," i.e. an expert, telling them that their body parts "were all connected" as justification for touching their breasts, buttocks, and public regions. Drs. Chang and Borchers's opinions could therefore not be more relevant to aid the jury in understanding the evidence and Defendant's conduct. They should be entitled to testify about the proper procedure for treating the injuries that the victims sustained, to include how such treatment is performed, obtaining consent, ensuring privacy, maintaining proper documentation, and why such practices are necessary, i.e. because the power imbalance makes students more susceptible to going along with a health professional when they may otherwise question it.

The cases cited by the Motion do not support exclusion of these opinions. *See United States v. Cohen*, 510 F.3d 1114, 1123-27 (9th Cir. 2007) (reversing exclusion of expert testimony regarding defendant's mental disorder, and noting that "the best way for the district court to have insured the exclusion of the potentially inadmissible aspects of Dr. Roitman's testimony was not to bar him from testifying altogether, but to sustain the government's objections to particular questions likely to elicit inadmissible evidence under [Rule 704(b)]."); *Lyons v. Williams*, 91 F.3d 1308, 1311-12 (9th Cir. 1996) (affirming exclusion of expert testimony regarding the emotional trauma typically experienced by rape victims); *Bonin v. Calderon*, 59 F.3d 815, 838 (9th Cir. 1995) (affirming exclusion of expert testimony regarding juror psychology in context of a *Strickland* claim); *11333 Incorporated v. Certain Underwriters at Lloyd's, London*, 261 F. Supp. 3d 1003, 1027-31 (D. Az. 2017) (excluding expert opinions about bad faith because, inter alia, they lacked sufficient factual basis). If anything, the authorities cited by the Motion support the inclusion of the testimony of Drs. Chang and Borchers, countering Defendant's argument that Dr. Borchers is not qualified to testify because he has never before testified in a courtroom. *See, e.g. SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 324-25 (D. Az. 2022) (years of relevant experience can establish the necessary minimal foundation for expert testimony, and disputes as to the strength of an expert's credentials go to weight, not admissibility),

Drs. Chang and Borchers are both eminently qualified to render expert opinions on the conduct of athletic trainers, and the Motion makes no sincere argument to the contrary.

### III. THE EXPERTS' METHODS ARE RELIABLE

The Motion's second argument is that the experts' opinions are unreliable under *Daubert*. But

the Motion again relies on the same fallacy that the proffered opinions relate to the victims' state of mind. The United States' experts are not offering opinions about the victims' state of mind, and therefore the Motion's argument that their testimony be excluded is meritless. Defendant acknowledges on page 6 of his motion that Dr. Borchers "may have expertise with respect to the common practices of athletic trainers," Doc. 44 at 6. Dr. Chang similarly has such expertise, and Defendant offers no objections as to their opinion with regard to the common practices of athletic trainers. Moreover, the Ninth Circuit explains that "expert medical testimony is based on specialized as distinguished from scientific knowledge, and the *Daubert* factors are not intended to be exhaustive or unduly restrictive." *Sullivan v. U.S. Dep't of Navy,* 365 F.3d 827, 834 (9th Cir. 2004). When evaluating specialized or technical expert opinion testimony . . .[a] trial court should admit medical expert testimony if physicians would accept it as useful and reliable. Utility to the jury of medical expert testimony should be determined by what physicians would accept as useful. *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (internal citations omitted). Defendant offers no argument to counter that Dr. Borchers and Chang can offer reliable and useful opinion testimony about legitimate practices in sports medicine.

Defendant also argues that specific phrases used by the experts in their reports call into question their opinions' reliability. For Dr. Borchers, Defendant claims that his opinion is unreliable due to the use of the phrase "issues remain in question" in the summary paragraph of his report. Defendant is taking this phrase out of context. In his summary, Dr. Borchers lists all of Defendant's practices that call into question the legitimacy of his treatment. Each of these innumerate topics are then set forth in the body of the report. Regardless, this is not a valid basis to exclude his opinion.

Defendant further argues that Dr. Chang's reference to the definition of "sexual abuse" as defined by the American Medical Society for Sports Medicine (ASSM) 2020 Position Statement renders her entire opinion inadmissible because she opined on a "relevant legal standard." It does not. The United States does not intent to elicit legal opinions from expert witnesses. The ASSM's definition of "sexual abuse" is not the applicable legal standard in this case. But Defendant's knowledge and adherence or lack thereof to policies, procedures, and standards governing sports medicine and athletic training (to include what constitutes "sexual abuse" within the industry) are relevant to prove that he

acted willfully. *See United States v. Rodella*, 804 F.3d 1317, 1338 (10th Cir. 2015) (evidence of training and knowledge of policies relevant to establishing willfulness in Section 242 prosecution); *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) ("evidence of departmental policies can be relevant to show intent in Section 242 cases."); *United States v. Bowen,* 2019 WL 3238469, at *3 (D. Ariz. July 18, 2019) (citing to *Rodella* and *Proano*. "[t]estimony that [d]efendant's conduct was outside of the [p]olicy's parameters is relevant to whether [he] acted willfully, which is an essential element of § 242."). Therefore, Dr. Chang's opinions as to whether Defendant adhered to industry standards, practices, and procedures are highly relevant. Her qualifications thus make her opinion all the more reliable, and therefore admissible.

## IV.    THE EXPERTS DO NOT STATE LEGAL CONCLUSIONS AS TO "COLOR OF LAW"

The Motion's third argument seeks to cast the experts' opinions as legal conclusions because the experts note that Defendant was in a position of power and authority over his victims. There is nothing improper about the experts' consideration of the relationship between Defendant and his victims under Rule 703. Nor is there anything improper about an opinion incorporating that power dynamic. The Motion's arguments to the contrary rely on Defendant's insistence that the jury's determination as to whether Defendant "acted under the color of law," an element of the offenses charged, "requires an evaluation of the positions of disparate power and influence between the defendant and the alleged victim." *See* Motion at 7. That is simply incorrect. To be clear, when someone who acts under color of law deprives an individual of their constitutional rights, it is typically accompanied by an exploitation of power. But the two are not the same. To "act under color of law" in the context of violating 18 U.S.C. § 242 means that Defendant was acting under the authority he possessed by virtue of state law when he was touching the victims. *See United States v. Classic*, 313 U.S. 299, 326 (1941). As this Court already decided, as a matter of law, public university employees who use their authority to facilitate misconduct act under color of law without regard to whether they had any special "power" over their victims. Doc. 37 at 6-7. The question of fact for the jury will be whether Defendant was employed by a public university and whether he acted in his authority as a public university employee when he engaged misconduct, regardless of whether he had "power" over the victim.

"Acting under the color of law" is not synonymous with "having power over," though the latter

arguably makes it easier for defendants to gain their victims' compliance. As doctors who treat student-athletes, Drs. Chang and Borchers, in addition to explaining to a jury what is legitimate medical practice, will also be able to explain to a jury why victims may have complied with Defendant, why they did not run out of the training room as he was assaulting them, and why they may have even gone to see Defendant again despite being assaulted in the first instance. Any expert opinion regarding whether Defendant had "power" over his victims therefore does not invade the province of the jury, address an ultimate issue of law, or violate Rule 704.

The authorities cited by the Motion are inapplicable because Dr. Chang and Dr. Borchers will not draw legal conclusions. *See United States v. Boulware*, 558 F.3d 971, 974-75 (9th Cir. 2009) (defendant sought to introduce expert testimony on the ultimate issue in the case (whether corporate distributions were legally non-taxable), but proffered evidence was "insufficient as a matter of law to support the [expert's] proffered . . . theory."); *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008) ("Zadek's legal conclusions not only invaded the province of the trial judge, but constituted erroneous statements of law."). In the absence of such defects (and the Motion identifies none for the United States' experts) the Ninth Circuit allows a broad range of expert testimony, "even if it embraces an ultimate issue to be decided by the trier of fact." *United States v. Clardy*, 612 F.2d 1139, 1153 (9th Cir. 1980); *See, e.g., United States v. Moran*, 493 F.3d 1002, 1008 (9th Cir. 2007). And where an expert does seek to opine on an ultimate issue of fact, the proper remedy is to exclude those specific opinions at trial, not to exclude the expert entirely. *See, e.g., IceMOS Technology Corporation v. Omron Corporation*, CV-17-02575-PHX-JAT, 2019 WL 4750129, * 12 (D. Az. Sept. 30 2019) ("[A]t this time, the Court does not exclude Cavaiani from offering any specific expert testimony at trial. However, should Defendant attempt to elicit testimony from Cavaiani on an ultimate issue at trial, Plaintiff may make an appropriate objection."); *Intervention911 v. City of Palm Springs*, 13-CV-01117 MMM, 2014 WL 12966791, at *27 (C.D. Cal. Aug. 4, 2014). Thus, the Motion's third argument provides no legal basis for any remedy at all, much less exclusion of the proffered expert testimony.

## V.   CONCLUSION

The Motion fails on multiple fronts. First, its arguments are directed towards non-existent

opinions; second, the arguments it makes about the experts' actual opinions fail to identify any defect; and third, the Motion fails to explain why the radical remedy it seeks – complete exclusions of experts – would be justified even if any of its other arguments were viable. The Motion should be denied, Defendant's objections overruled, and the United States should be permitted to call Drs. Chang and Dr. Borchers as expert witnesses at trial.

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney


_____/s/_____
MICHAEL G. PITMAN
Assistant United States Attorney

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

FARA GOLD
Special Litigation Counsel

Attorneys for United States of America