THOMAS A. COLTHURST (CABN 99493)
Attorney for the United States

KATHERINE L. WAWRZYNIAK (CABN 252751)
Acting Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone:     (408) 535-5040
Facsimile:     (408) 535-5081
Email: michael.pitman@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
MARLA DUNCAN
Trial Attorney
SARAH HOWARD
Attorney Advisor
Criminal Section, Civil Rights Division
United States Department of Justice

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SCOTT SHAW,<br><br>　　　　Defendant. | Case No. 5:22-cr-00105-BLF<br><br>UNITED STATES' SUPPLEMENTAL BRIEF REGARDING EVIDENCE OF OTHER ACTS OF SEXUAL ASSAULT PURSUANT TO FED. R. EVID. 413 |

　　　　The United States, by and through undersigned counsel, hereby respectfully submits the following brief in support of its request to call witnesses pursuant to Fed. R. Evid. 413 at trial. In a Motion filed on January 30, 2023 (Doc. 43), the United States requested permission to call as many as sixteen witnesses pursuant to Rule 413. After reviewing briefing and hearing argument, the Court held that fifteen of the proffered witnesses satisfied Rule 413. *See* Doc. 68 at page 14. However, the Court also noted that it had made a ruling with respect to each witness in isolation, and that it was cognizant of the potential for

Rule 413 testimony to become prejudicially cumulative, and thus excludable under Fed. R. Evid. 403. *See* Doc. 68 at page 15. Accordingly, the Court held that at least four Rule 413 witnesses would be permitted to testify at trial, and reserved judgement with respect to additional witnesses. *See* Doc. 68 at page 17.

The United States has reduced the number of Rule 413 witnesses it seeks permission to call at trial from fifteen to eight, and respectfully submits the following brief to identify the four 413 witnesses it intends to call pursuant to the permission granted by the Court in its April 5th Order, and also to propose four additional Rule 413 witnesses, and to explain why testimony from the additional witnesses is necessary and appropriate. As discussed in more detail in the United States' Letter Brief, filed on March 31, 2023 (Doc. 66), the Court would be well within its discretion in allowing testimony from eight Rule 413 witnesses. Each of them will provide relevant, non-redundant testimony and will corroborate different components of the anticipated testimony of the charged victims. Thus, all eight of the government's proposed Rule 413 witnesses satisfy the key "necessity" factor in the Ninth Circuit's five-pronged admission standard, set forth in *United States v. LeMay*, 260 F.3d 1018, 1027-28 (9th Cir. 2001), and discussed in further detail in the government's previously-filed briefs and the Court's April 5th Order. *See* Doc. 68 at 17 ("The Court will be able to better make a Rule 403 determination if it knows specifically, for each witness, why the testimony is necessary – to corroborate which aspect of the testimony of the charged victims."); *see also* Doc. 43 (applying the *LeMay* factors to the government's proposed Rule 413 witnesses); *and United States v. Perrault*, 995 F.3d 748, 769-70 (10th Cir. 2021) (affirming district court's decision to allow testimony from seven Rule 414 witnesses in case involving one charged victim because "[e]ach witness's testimony buttressed weak or assailable evidence").

The government anticipates that Defendant may seek to convince the jury that his conduct was inadvertent, that his conduct was medically necessary, or that the female student-athletes exaggerated or overreacted to what they perceived as inappropriate touching. "A prior sexual assault admissible under Rule 413 'need not be identical to [the charged offense] to have substantial probative value.'" *United States v. Yarlott*, CR 20-60-BLG, 2020 WL 6393894, at *4 (D. Mont. Nov. 2, 2020) (quoting *United States v. Erramilli*, 788 F.3d 723, 729 (7th Cir. 2015)). Here, Defendant's sexual assaults of student-athletes all followed the same pattern of behavior from the beginning of his employ at San Jose State

University ("SJSU") in 2006 until his resignation in 2020. They all involve Defendant's exploitation of his position as an athletic trainer to gain and maintain access to young women in need of medical treatment, and to sexually assault them, with the statute of limitations being the only real distinction between his charged and uncharged assaults. While the exact type of inappropriate touching varies among the Rule 413 witnesses, as explained below, these distinctions do not negatively impact the probative value of the Rule 413 witnesses' testimony, and thus do not undermine their admissibility.

## I. THE CHARGED SEXUAL ASSAULTS

### 1. Victim One

Count One charges Defendant with touching Victim One's breast without her consent and without a legitimate medical purpose. Victim One, a member of SJSU's women's water polo team, saw Defendant for treatment of her left shoulder during the Fall of 2017. Defendant massaged the back of her shoulder and neck and then moved his hand under her sports bra and touched her left breast and then her right breast. Victim One assumed that as the head athletic trainer, Defendant knew what he was doing, even though he gave her no warning and did not ask for her consent. When Victim One questioned his actions, Defendant said he was using "pressure point therapy," and that she needed the treatment because she often hunched over.

### 2. Victim Two

Counts Two and Three charge Defendant with touching Victim Two's breast and buttocks, respectively and on different occasions, without her consent and without a legitimate medical purpose. Victim Two, a member of SJSU's women's water polo team, was treated by Defendant multiple times. While treating Victim Two for a right shoulder injury during the Fall of 2017, Defendant applied pressure to both sides of her neck and worked his hands down to her chest, and then to her left side. Victim Two told Defendant that her left shoulder did not hurt, but he said she had a pressure point there, and that he needed to continue or her shoulder would never heal. Defendant then moved his hands into Victim Two's bra, touching her breast and nipple. He touched her breasts on multiple occasions, but only touched her nipple one time. During the 2018-2019 school year, Victim Two sought treatment from Defendant for back pain. Defendant put his hand down her shorts, making skin to skin contact with her buttocks. When Victim Two reacted with surprise, Defendant told her that he touched her buttocks

because he could not reach her knee (as he had during previous sessions).

### 3. Victim Three

Count Four charges Defendant with touching Victim Three's breast without her consent and without a legitimate purpose. Victim Three, a member of SJSU's women's water polo team, sought treatment from Defendant for tendonitis in her shoulder in the Spring of 2019. Defendant pushed on her shoulder and then moved his hand near her breast. Victim Three told Defendant there was no pain in her breast area and explained the kinds of treatment her usual trainer performed. In response, Defendant used technical terms to justify his actions, and dismissed Victim Three's concerns. Defendant assured her that the muscles were connected and then put his hand on her breast.

### 4. Victim Four

Counts Five and Six charge Defendant with touching Victim Four's breast and buttocks, respectively and on different occasions, without her consent and without a legitimate purpose. Victim Four, a member of SJSU's women's soccer team, sought treatment from Defendant for back pain in 2019 and 2020. During a treatment session, Defendant asked Victim Four to stand and turn around away from him. Without warning, Defendant reached around her to tuck the front of her shirt into the front of her sports bra, touching both of her breasts. Defendant then instructed Victim Four to bend over. He put his hands on her back, walking his thumbs downward, pressing on her vertebrae. When Defendant got to her lower back, he cupped her buttocks through her pants. In early 2020, Victim Four sought Defendant's assistance in placing "stim pads" on her lower back. When Defendant applied the pads to Victim Four, he put his bare hands on her bare buttocks.

## II. UNCHARGED CONDUCT

### 1. VICTIM C

Victim C was a student-athlete on SJSU's women's softball team. In the fall of 2009, Victim C went to Defendant for treatment of a hematoma on her shin. During Defendant's supposed treatment of Victim C, he rubbed her thigh underneath her shorts. During a subsequent visit to the training room, Victim C told Defendant that she had pulled a hamstring. Defendant said he could stretch it out, and told Victim C to lay down on her back on the floor mat. Victim C laid on the ground, and raised her injured leg vertically, expecting Defendant to stand in front of her and push her leg back towards her head.

Instead, Defendant got down on one knee, positioned himself groin to groin with her, and began stretching her leg. Defendant was wearing thin shorts, and as he stretched her, his genitals were touching Victim C's, and she could feel Defendant's penis getting erect. Victim C then stopped Defendant, and left the training room. Victim C later told her coach that she would no longer go to the training room for treatment, but her coach did not ask why. Victim C's testimony will corroborate anticipated testimony from Victim Three regarding her refusal to return to receive treatment from Defendant or other trainers after being assaulted, even though her injury had not yet completely healed.

The Court has already determined that Victim C's testimony is admissible pursuant to Rule 413, *see* Doc. 68 at page 14, and the United States currently expects to call Victim C as one of the four Rule 413 witnesses the Court has pre-authorized under Rule 403. *See* Doc. 68 at page 17.

### 2. VICTIM A

Victim A was a student-athlete on SJSU's women's volleyball team. In the fall of 2008, Victim A went to Defendant for treatment of a shoulder injury. Defendant told Victim A to lie down face-up on a massage table and pulled Victim A's arm above her head and stretched, seeming to work on her shoulder. He then moved his hand along the side of her breast, and then onto her breast itself. When she questioned him, he dismissed her concern, condescending to her for questioning his methods – testimony which will corroborate anticipated testimony from Victims Two and Three as to Defendant's response when they expressed concern or surprise over his treatment methods. Victim A ended the treatment and got off the table. She then went to volleyball practice where she announced that Defendant had touched her inappropriately. Victim A never went back to Defendant for treatment and sought to avoid him whenever possible.

The Court has already determined that Victim A's testimony is admissible pursuant to Rule 413, *see* Doc. 68 at page 14, and the United States currently expects to call Victim A as one of the four Rule 413 witnesses the Court has pre-authorized under Rule 403. *See* Doc. 68 at page 17.

### 3. VICTIM I

Victim I was a student-athlete on SJSU's women's swim team. During the Fall/Winter of 2008-2009, Victim I went to Defendant for treatment for shoulder and knee injuries. During treatment sessions, Defendant lifted her sports bra such that he could see her breasts, and he touched her breast and

areola. Defendant also walked his fingers along her bare breast to place stim pads. Defendant also touched Victim H's breasts while performing supposed massage-type therapy several times. During other sessions, Defendant moved his hand from her hip down to her pelvic area and touched her pubic area before placing a stim pad on her hip. Because Victim I received both "stim" and massage-type treatment from Defendant, Victim I's testimony will corroborate testimony from the charged victims regarding Defendant's use of multiple types of treatments as a pretext for his inappropriate conduct. Victim I did not confront Defendant, but she felt uncomfortable, and eventually stopped going to Defendant for treatment.

The Court has already determined that Victim I's testimony is admissible pursuant to Rule 413, *see* Doc. 68 at page 14, and the United States currently expects to call Victim I as one of the four Rule 413 witnesses the Court has pre-authorized under Rule 403. *See* Doc. 68 at page 17.

**4.   VICTIM K**

Victim K was a student-athlete on SJSU's women's swim team. During 2006-2007, Victim K went to Defendant for treatment for shoulder and hip injuries. Defendant worked on her left shoulder and then moved his hand down the sides of her left breast. Over time, he moved his hand across her chest underneath her sports bra, grazed her nipples, and then massage her right breast. This occurred dozens of times, and Defendant called it "pressure point therapy." When he conducted such treatment for her back pain, Defendant moved her swimsuit to reveal her bikini line, and massaged along her groin and pubic area, though he never touched her labia. Victim K can also corroborate anticipated testimony from Victim Three that Defendant used terms such as "trigger point" and "pressure point" to describe his techniques, which is relevant because most of the touching described by the victims is not consistent with trigger/pressure point therapy.

The Court has already determined that Victim K's testimony is admissible pursuant to Rule 413, *see* Doc. 68 at page 14, and the United States currently expects to call Victim K as one of the four Rule 413 witnesses the Court has pre-authorized under Rule 403. *See* Doc. 68 at page 17.

**5.   Victim O**

Victim O was a student-athlete on SJSU's women's swim team. During 2009-2010, Victim O went to Defendant for treatment for shoulder and hip injuries. During several sessions, Defendant put his

hands in her sports bra and touched her breasts.

The Court has already determined that Victim O's testimony is admissible pursuant to Rule 413, *see* Doc. 68 at page 14. The United States respectfully submits that Victim O's testimony should also be permitted under Rule 403 because, unlike the other members of the SJSU women's swim team that the government intends to call under Rule 413, although she was a member of the women's swim team (complaints from which resulted in an investigation of Defendant in 2009 and 2010), Victim O did not discuss her contact with Defendant at length with other members of the team. Thus, Victim O's testimony will rebut any implication that members of the team influenced each other's complaints. Victim O can also describe second-guessing her own instincts that Defendant's treatment was improper because she believed Defendant was more knowledgeable than she was, which would corroborate similar anticipated testimony from Victims Three and Four. Finally, because Victim O saw Defendant for treatment on several occasions during which he did not touch her inappropriately, she can corroborate anticipated testimony from Victim Two that Defendant sometimes rendered treatment which did not involve any inappropriate touching.

**6.   Victim G**

Victim G was a student-athlete on SJSU's women's swim team. During 2008-2009, Victim G went to Defendant for treatment for a shoulder injury. During several sessions, Defendant placed stim pads inside her sports bra, close to her nipples, touching her breasts. Victim G did not confront Defendant, but she felt uncomfortable, and she eventually told her coach about Defendant's misconduct.

The Court has already determined that Victim G's testimony is admissible pursuant to Rule 413, *see* Doc. 68 at page 14. The United States respectfully submits that Victim G's testimony should also be permitted under Rule 403 because, like Victims Two and Four, Victim G returned to Defendant for treatment even after she had been assaulted. However, unlike any of the charged victims, Victim G did report Defendant's conduct to relevant authorities. Thus, Victim G's testimony will illustrate the fact that student-athletes recognized Defendant's conduct as improper, even if they returned for subsequent treatment. And, unlike the four Rule 413 witnesses the Court has preauthorized under Rule 403, it is anticipated that Victim G will describe feeling pressure to receive treatment from Defendant in order to maintain a scholarship, which would corroborate similar anticipated testimony from Victim Three.

Because Victim G received treatment from athletic trainers other than Defendant, Victim G can also corroborate anticipated testimony from Victims One and Two that Defendant's techniques were very different from those of other athletic trainers. Finally, Defendant used the placement of stim pads as a pretext for touching Victim G, similar to his conduct with respect to Victim Four.

### 7. Victim P

Victim P was a student-athlete on SJSU's women's swim team. During 2009, Victim P went to Defendant for treatment for shoulder and hip injuries. During treatment sessions, Defendant put his fingers down the sides of her sports bra, touching her breasts and nearly touching her nipple. When treating her hip, although Defendant used a towel to cover her, Defendant put his hand under the towel and massaged her bikini line directly.

The Court has already determined that Victim P's testimony is admissible pursuant to Rule 413, *see* Doc. 68 at page 14. The United States respectfully submits that Victim P's testimony should also be permitted under Rule 403 because, unlike several of the charged victims and Rule 413 witnesses, Victim P has never been a plaintiff in a lawsuit against SJSU based on Defendant's conduct. Thus, Victim P's testimony will rebut any implication that any other victim had a financial incentive to fabricate allegations. Defendant also touched Victim P inappropriately on her upper body and her lower body while treating two distinct injuries, and so Victim P can corroborate Victim Two's description of how Defendant's inappropriate conduct changed depending on what injury he was purporting to treat. Finally, because Victim P received treatment from athletic trainers other than Defendant, Victim P can also corroborate anticipated testimony from Victims One and Two that Defendant's techniques were very different from those of other athletic trainers.

### 8. Victim N

Victim N was a student-athlete on SJSU's women's swim team. During 2007-2009, Victim N went to Defendant for treatment of shoulder injuries. During several sessions, Defendant placed his hand in her sports bra and touched the top of her breast.

The Court has already determined that Victim N's testimony is admissible pursuant to Rule 413, *see* Doc. 68 at page 14. The United States respectfully submits that Victim N's testimony should also be permitted under Rule 403 because Victim N can corroborate anticipated testimony from Victims Two

and Three that Defendant touched student-athletes on parts of their body that were not related to their injuries. Additionally, because Victim N received treatment from athletic trainers other than Defendant, Victim N can also corroborate anticipated testimony from Victims One and Two that Defendant's techniques were very different from those of other athletic trainers. Victim N can also corroborate anticipated testimony from Victim Three that Defendant used terms such as "trigger point" and "pressure point" to describe his techniques, which is relevant because most of the touching described by the victims is not consistent with trigger/pressure point therapy. Finally, Victim N is unique among the government's proposed Rule 413 witnesses in her ability to provide relevant testimony about how Defendant's breast-touching progressed and increased over time, because Victim N is one of Defendant's earliest victims and began seeing Defendant shortly after beginning her athletic career at SJSU.

## CONCLUSION

The United States has reduced the number of Rule 413 witnesses it seeks permission to call at trial from fifteen to eight. Each of the proposed Rule 413 witnesses corroborates different components of the anticipated testimony from charged victims and helps to establish Defendant's pattern of conduct. They will also rebut Defendant's likely defenses by providing circumstantial evidence of his state of mind, and also by illustrating to the jury that individual victims' failure to object to Defendant's conduct contemporaneously is not inconsistent with Defendant's guilt. Thus, the testimony of all eight of the proposed Rule 413 witnesses is necessary to buttress different pieces of relevant evidence. In weighing the *LeMay* factors, the probative value of the uncharged sexual assaults substantially outweighs any danger of unfair prejudice, and any unfair prejudice can be mitigated trough an appropriate limiting instruction.

For the reasons set forth above, the United States respectfully requests that the Court admit the evidence of Defendant's other acts of sexual assault, pursuant to Fed. R. Evid. 413.

Respectfully submitted,

THOMAS A. COLTHURST
Attorney for the United States

*/s/ Michael G. Pitman*
MICHAEL G. PITMAN
Assistant United States Attorney

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*/s/ MarLa Duncan*
MarLa Duncan
Trial Attorney
Criminal Section, Civil Rights Division

Attorneys for United States of America