1  PATRICK D. ROBBINS (CABN 152288)
   Attorney for the United States

2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  MICHAEL G. PITMAN (DCBN 484164)
   Assistant United States Attorney
5  150 Almaden Boulevard, Suite 900
   San Jose, CA 95113
6  Telephone:     (408) 535-5040
   Facsimile:      (408) 535-5081
7  Email: michael.pitman@usdoj.gov

8  KRISTEN CLARKE
   Assistant Attorney General
9  MARLA DUNCAN
   Trial Attorney
10 SARAH HOWARD
   Attorney Advisor
11 Criminal Section, Civil Rights Division
   United States Department of Justice
12
   Attorneys for United States of America
13
                    UNITED STATES DISTRICT COURT
14
                  NORTHERN DISTRICT OF CALIFORNIA
15
                        SAN JOSE DIVISION
16

17 | UNITED STATES OF AMERICA,          | Case No. 5:22-cr-00105-BLF
18 |        Plaintiff,                  | UNITED STATES' SENTENCING
   |                                    | MEMORANDUM
19 |    v.                              |
   |                                    | Date:    November 14, 2023
20 | SCOTT SHAW,                        | Time:    9:00 AM
   |                                    | Place:   Courtroom 1, San Jose
21 |        Defendant.                  |

22

23        The United States of America ("United States") hereby respectfully submits the following

24 Sentencing Memorandum regarding Defendant Scott Shaw (the "Defendant") pursuant to Crim. L.R. 32-

25 5(b):

26 **I.      SUMMARY OF THE CASE**

27        On March 10, 2022, the Defendant was charged with six counts of deprivation of rights under

28 color of law in violation of 18 U.S.C. § 242.  The matter went to trial beginning on July 17, 2023, but

1  the jury was unable to reach a verdict, and a mistrial was declared on August 3, 2023.  On August 15,

2  2023, the Defendant pleaded guilty to Counts 2 and 5 of the captioned Information.  In connection with

3  his plea, the Defendant admitted that, from 2008 until August 2020, he served as the Director of Sports

4  Medicine and Head Athletic Trainer at San Jose State University ("SJSU"), and that his duties included

5  treating injuries sustained by student athletes at SJSU.  The Defendant further admitted that, between

6  2017 and 2020, he violated the civil rights of four SJSU students who were members of women's

7  athletics teams by touching their breasts and buttocks without any legitimate diagnostic or treatment

8  purpose, and without seeking or securing their consent in advance, and also that he did so willfully, and

9  with the specific intent to deprive each of the student athletes of their Constitutional rights to bodily

10  integrity, and not through mistake, carelessness, or accident.

11  **II.      SUMMARY OF UNITED STATES' SENTENCING RECOMMENDATIONS**

12  The United States and the Presentence Investigation Report ("PSR") agree that the Defendant's

13  Total Offense Level is 20, and that the Guideline term of imprisonment is 24 months.  *See* PSR at ¶¶ 46

14  & 82.  The United States also agrees with the PSR's conclusion that there is no basis for a variance or a

15  departure.  *See* PSR at ¶¶ 101 & 102.

16  The Defendant engaged in a long-term scheme to abuse the authority granted to him by the State,

17  and to take advantage of the young women he was supposed to be caring for.  Specifically, the

18  Defendant used his position at SJSU to gain access to female student athletes, and, under the pretext of

19  treating their injuries, to repeatedly grope them.  The Defendant's crimes covered many years, involved

20  multiple victims, some of whom he victimized repeatedly, and, as the Court had an opportunity to

21  observe during their testimony at trial, the Defendant's crimes left an indelible mark on some of his

22  victims.  The Defendant abused a position of trust and authority, and cynically preyed on young women

23  for his own gratification.  Accordingly, the United States respectfully recommends that the Defendant be

24  sentenced to: A term of imprisonment of 24 months; a one-year term of supervised release; an order to

25  pay a fine of $30,000; and a special assessment of $50.  This sentence is consistent with the Guidelines,

26  and it is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §

27  3553, including reflecting the nature and circumstances of Defendant's crimes, and the need for the

28  sentence to reflect the seriousness of those crimes, to promote respect for the law, provide just

1  punishment, and especially to afford adequate deterrence – to the Defendant and others who would seek
2  to engage in similar conduct.

3  **III.    SENTENCING CALCULATION**

4       Trial courts, "while not bound to apply the Guidelines, must consult those Guidelines and take
5  them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 267 (2005); *see also Gall*
6  *v. United States*, 552 U.S. 38, 51 (2007) (failure to calculate, or improperly calculating, the Guidelines
7  range constitutes a procedural error at sentencing).  The Plea Agreement (Dkt. No. 187) does not include
8  a Guidelines calculation, but, as set forth below, the United States agrees with the PSR's conclusion that
9  Defendant's Adjusted Offense Level is 20, and that the Guideline term of imprisonment is 24 months.
10 *See* PSR at ¶¶ 46 & 82.

11       **A.    Base Offense Level**

12      The United States agrees with the PSR's conclusion that the Defendant's base offense level is 12
13 under USSG §§ 2H1.1(a)(4) & 2A3.4(a)(3).  *See* PSR at ¶ 28.  The Guidelines for offenses involving
14 individual rights, such as violations of Section 242, are found in Section 2H.1.1.  Under Section 2H.1.1,
15 the base offense level is either the offense level from the offense Guidelines applicable to any
16 underlying offence (Section 2H.1.1(a)(1)), or 6 (Section 2H.1.1(a)(4)), whichever is higher.  Here, there
17 is a Guideline applicable to any underlying offence – USSG § 2A3.4(a) (Abusive Sexual Contact).
18 Under 18 U.S.C. § 2246(3), "the term 'sexual contact' means the intentional touching, either directly or
19 through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an
20 intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  The
21 Defendant has admitted that he touched female student athletes' breasts, areolas, and buttocks without
22 any legitimate diagnostic or treatment purpose, and without their consent, and with the specific intent to
23 violate his victims' Constitutional rights to bodily integrity.  *See* Plea Agreement, Dkt. No. 187, at ¶¶
24 2(a) – 2(f).  Thus, Section 2A3.4(a) applies, and, since neither Section 2A3.4(a)(1) nor Section
25 2A3.4(a)(2) applies, the Guideline defaults to 2A3.4(a)(3), which produces a base offense level of 12.

26       **B.    Specific Offense Characteristics: Custody, Care, or Supervisory Control**

27      The United States agrees with the PSR's conclusion that the Defendant should receive a two-
28 level enhancement under USSG § 2A3.4(b)(3).  *See* PSR at ¶ 28.  Section 2A3.4(b)(3) applies a two-

1   level enhancement if the Defendant's victim was in his "custody, care, or supervisory control." This

2   subsection is "intended to have broad application and is to be applied whenever the victim is entrusted to

3   the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-

4   sitters, or other temporary caretakers are among those who would be subject to this enhancement." *See*

5   USSG § 2A3.4, cmt. 4(A). In determining whether a victim was under the "custody, care, or

6   supervisory control" of a defendant under similar Guidelines provisions, the Ninth Circuit has explained

7   that "any relationship in which the defendant actually plays a caretaking role may subject that defendant

8   to the enhancement." *United States v. Swank*, 676 F.3d 919, 923-24 (9th Cir. 2012) (interpreting USSG

9   § 2A3.1(b)(3) using authority related to USSG § 2G1.3(b)(1)); *see also United States v. Harris*, 999

10  F.3d 1233, 1237 n.2 (9th Cir. 2021) (because the "custody, care, or supervisory control" language found

11  in USSG §§ 2G2.1(b)(5), 2A3.1(b)(3), and 2G1.3(b)(1) is identical "we interpret the principles

12  announced for each as applicable to the others.").

13      Here, the victims were temporarily entrusted to the Defendant for the purpose of receiving

14  treatment for their injuries, and the Defendant assumed a caretaking role while providing that treatment.

15  The enhancement appropriately recognizes the harm suffered by the victims in this case – namely, the

16  "particular harm inflicted when an individual entrusted to the care and supervision of an officer of the

17  state is unlawfully abused by his supposed caretaker." *United States v. Volpe*, 224 F.3d 72, 76 (2d Cir.

18  2000); *see also United States v. Simmons*, 470 F.3d 1115, 1128 (5th Cir. 2006) (same). Thus, the

19  Defendant should receive a two-level enhancement.

20      **C.      Specific Offense Characteristics: Offenses Committed Under Color of Law**

21      The United States agrees with the PSR's conclusion that the Defendant should receive a six-level

22  enhancement under USSG § 2H1.1(b)(1)(B). *See* PSR at ¶ 29. Section 2H1.1(b)(1)(B) applies a six-

23  level enhancement if the offense was committed under color of law. It is not double-counting to include

24  enhancements under both Section 2A3.4(b)(3) (custody, care, or supervisory control), and

25  2H1.1(b)(1)(B) (color of law). *See Volpe*, 224 F.3d at 76 (holding that a police officer who sexually

26  abused a victim inflicted additional, separate harms by doing so "under color of law" and while the

27  victim was in his "custody, care, or supervisory control"). Thus, the Defendant should receive a six-

28  level enhancement.

UNITED STATES' SENTENCING MEMORANDUM                    4
Case No. 5:22-cr-00105-BLF

1    **D.      Grouping**

2         The United States agrees with the PSR's conclusion that the Defendant should receive a two-

3    level enhancement under USSG §§ 3D1.1, 3D1.2 & 3D1.4.  *See* PSR at ¶¶ 40 – 43.  Sections 3D1.1 and

4    3D1.2 set forth the general rules for "grouping" multiple counts of conviction involving substantially the

5    same harm, but Section 3D1.2 explicitly excludes counts that are governed by Section 2H1.1 from

6    grouping.  As a result, each count is treated as a separate group.  Because each count has the same

7    offense level, each count is its own unit under Section 3D1.4, producing a total of two units.  Section

8    3D1.4 provides for a two-level increase when there are two units.  Thus, the Defendant should receive a

9    two-level enhancement.

10   **E.      Acceptance of Responsibility**

11        The United States agrees with the PSR's conclusion that the Defendant should receive a two-

12   level reduction under USSG § 3E1.1(a).  *See* PSR at ¶ 45.  Section 3E1.1(a) applies a two-level

13   reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  Here,

14   the Defendant pled guilty immediately after a mistrial and accepted responsibility for two of his

15   offenses, and the two-level reduction is appropriate.

16        Under certain circumstances, Section 3E1.1(b) applies an additional one-level reduction "upon

17   motion of the government stating that the defendant has assisted authorities in the investigation or

18   prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of

19   guilty, thereby permitting the government to avoid preparing for trial and permitting the government and

20   the court to allocate their resources efficiently."  This provision does not apply here because the

21   Defendant pleaded guilty only after a complete trial.  Thus, he failed to notify the government or the

22   Court of his intent to admit his crimes in time to allow the government to avoid preparing for trial, and

23   the Defendant's delay in pleading guilty impeded both the government's and the Court's ability to

24   allocate their resources efficiently.  Consequently, Section 3E1.1(b) does not apply, the government

25   does not move for the additional one-level reduction, and no such reduction should be applied.

26   **F.      Section 4C1.1 Does Not Apply**

27        The United States agrees with the PSR's conclusion that the Defendant should not receive a

28   reduction under USSG § 4C1.1.  *See* PSR at ¶¶ 28 – 39.  In April 2023, the United States Sentencing

1    Commission proposed several amendments to the Guidelines.  These amendments will become effective

2    in November 2023, absent Congressional action.  One of the proposed amendments would create a new

3    Chapter Four Guideline at Section 4C1.1 providing for a decrease of two levels from the offense level

4    for offenders who have zero criminal history points, subject to certain exceptions.  One of the

5    enumerated exceptions, found at Section 4C1.1(8), makes defendants ineligible for any credit if the

6    offense of conviction is covered by Section 2H1.1.  Since, as discussed above, the counts of conviction

7    in this case are covered by Section 2H1.1, the Defendant should receive no credit under Section 4C1.1.

8    **G.      Resulting Guidelines Calculation**

9          a.      Base Offense Level, USSG §§ 2H1.1(a)(4) & 2A3.4(a)(3):            12

10         b.      Specific Offense Characteristic, USSG § 2A3.4(b)(3)              +2
                   (custody, care, or supervisory control)

11
12         c.       Specific Offense Characteristic: USSG § 2H1.1(b)(1)(B)         +6
                    (offenses committed under color of law)

13         d.      Multiple Counts, USSG §§ 3D1.1 & 3D1.4                          +2

14         e.      Acceptance of Responsibility: USSG § 3E1.1                      - 2

15         f.      Adjusted Offense Level:                                          20

16         Because the Defendant is in Criminal History Category I, the sentencing table recommends a

17   term of impressment between 33 – 41 months.  However, as discussed below, because the statutorily

18   authorized maximum sentences for the counts of conviction are lower than the minimum of the

19   applicable Guideline range, the Guideline term of imprisonment is 24 months under USSG § 5G1.1.

20   **IV.   CONSECUTIVE SENTENCES ARE APPROPRIATE**

21         The statutorily authorized maximum sentence for each of the counts of conviction is 12 months,

22   but that maximum is to be applied to each count, individually.  The Guidelines direct that where the

23   statutorily authorized maximum sentences for the counts of conviction are lower than the minimum of

24   the applicable Guideline range then the statutorily authorized maximum sentences for the counts of

25   conviction "shall be the guideline sentence."  *See* USSG § 5G1.1(a).  Moreover, where the Guideline

26   range exceeds any single count of conviction's statutory maximum, consecutive rather than concurrent

27   sentences should be imposed to the extent necessary.  *See* USSG § 5G1.2(d); *see also United States v.*

28   *Iniguez*, 368 F.3d 1113, 1115-17 (9th Cir. 2004).  In this case, because the statutorily authorized

1  maximum sentences for the counts of conviction are lower than the minimum of the applicable

2  Guideline range, the Guideline term of imprisonment is 24 months, and the Court should impose

3  consecutive sentences to achieve that sentence.  *See* PSR at ¶¶ 81 & 82.

4  **V.      SECTION 3553(a) FACTORS**

5          Pursuant to the Sentencing Reform Act, 18 U.S.C. § 3553, the Court "shall impose a sentence

6  sufficient, but not greater than necessary, to comply with the purposes set forth in" Section 3553(a)(2),

7  and, in so doing, the Court "shall consider," among other things: (1) the nature and circumstances of the

8  offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to: (A)

9  reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the

10 offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of

11 the defendant; and (D) provide the defendant with needed educational or vocational training, medical

12 care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4)

13 the kinds of sentence and the sentencing range established by the guidelines; (5) any pertinent policy

14 statement; and (6) the need to avoid unwarranted sentence disparities among defendants with similar

15 records who have been found guilty of similar conduct.  *See* 18 U.S.C. § 3553(a).

16         Applying these factors, a prison sentence of 24 months is not more than necessary to achieve the

17 purposes of sentencing.  In fact, as explained in further detail below, a sentence of 24 months is

18 significantly less than the Guidelines range that would apply but for the statutory maximum of one year

19 imprisonment for each count under Section 242.  Because, however, this Court is constrained by the

20 statutory maximum, a sentence of 24 months is the most appropriate sentence possible in light of the

21 Section 3553 factors.

22         **A.      History and Characteristics of the Defendant**

23         The Court must consider "…the history and characteristics of the defendant." 18 U.S.C. §

24 3553(a)(1).  In that vein, the Court should look not only to the crimes committed against the charged

25 victims in this case for which he has pled guilty, but also to the Defendant's demonstrated pattern of

26 practiced predatory behavior and the trauma that he left in his wake.

27         The Supreme Court has repeatedly held that a trial court can and should consider uncharged

28 relevant conduct when imposing a sentence in order to fully understand the scope of the Defendant's

1    conduct.  *See, e.g., United States v. Watts*, 519 U.S. 148, 151-52 (1997) (internal citations omitted)

2    ("Highly relevant-if not essential [to the judge's] selection of an appropriate sentence is the possession

3    of the fullest information possible concerning the defendant's life and characteristics.").  This includes a

4    defendant's past criminal conduct, even if such conduct did not result in a conviction or is beyond the

5    reach of federal jurisdiction.  *See Nichols v. United States*, 511 U.S. 738, 747 (1994); *see also Edwards*

6    *v. United States*, 523 U.S. 511, 513-14 (1998); *United States v. Christensen*, 732 F.3d 1094, 1102 (9th

7    Cir. 2013) ("[A] sentencing judge may appropriately conduct an inquiry broad in scope, largely

8    unlimited either as to the kind of information he may consider, or the source from which it may come.");

9    18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background,

10   character, and conduct of a person convicted of an offense which a court of the United States may

11   receive and consider for the purpose of imposing an appropriate sentence.").

12          The Defendant's uncharged criminal conduct, committed against all of the female student

13   athletes that he groped, fondled, and abused for over a decade, falls into the category of information this

14   Court may consider.  The Defendant groped and abused dozens of female athletes throughout his

15   employ at SJSU.  Allegations of the Defendant's sexual misconduct first surfaced in 2009, when female

16   athletes from the swimming and diving team disclosed to their coach that the Defendant had

17   inappropriately touched their breasts, buttocks, and vaginal areas during training sessions.

18          During the United States' investigation into the Defendant's conduct, over twenty-eight female

19   student athletes that were abused and groped during the Defendant's tenure as an athletic trainer and

20   Director of Sports Medicine came forward.  This group was narrowed to the sixteen ultimately presented

21   to the Court as potential Rule 413 witnesses.  Although these women were from different sports and

22   sought treatment for different injuries, their reports of the Defendant's abuse were remarkably similar.

23   Multiple women described the Defendant putting his hand in their underwear and massaging their pubic

24   area.  Many more of the women reported the Defendant touching their breasts, areolas, and nipples.

25   Most of these women did not know each other; they were brought together by the Defendant's

26   systematic abuse.

27          The Defendant targeted vulnerable victims – specifically, he targeted injured female student

28   athletes, who were inexperienced in handling their own healthcare and more likely to be deferential to

UNITED STATES' SENTENCING MEMORANDUM          8
Case No. 5:22-cr-00105-BLF

1    his alleged "treatment" methods so that they could return to playing the sport that they loved.  When

2    some of these victims *did* question his conduct and reported it to SJSU officials, the Defendant masked

3    his criminal conduct with medical jargon, weaponized the victim's vulnerability, and suggested to them

4    that they were either "confused" or "misunderstanding" his techniques.  Sadly, this sinister tactic worked

5    for the Defendant back in 2009, resulting in many of the early victims falling outside of the statute of

6    limitations.  The full extent of the Defendant's abusive conduct is relevant to the history and

7    characteristics of this Defendant, and supports the sentence recommended by the United States.

8    **B.    Nature and Circumstances of the Offense**

9    The Defendant served as the Director of Sports Medicine and Head Athletic Trainer at SJSU for

10   approximately twelve years and was an employee of the State of California.  He used the power and

11   authority given to him by the State to grope and abuse the charged victims in this case.  In addition to

12   the two specific counts he pled to, this Court should further take note of the Defendant's admission in

13   his Plea Agreement that he abused all four of the charged victims in this case.  *See* Plea Agreement, Dkt.

14   No. 187, at ¶¶ 2(a) – 2(f).  The Guidelines themselves are instructive on this point.  They specifically

15   note that a "plea agreement . . . containing a stipulation that specifically establishes the commission of

16   additional offenses shall be treated as if the defendant had been convicted of additional counts charging

17   those offenses."  USSG § 1B1.2(c).

18   The Defendant's victims only allowed him to have physical contact with them because of his

19   status and role as SJSU Athletic Trainer.  *See* Plea Agreement, Dkt. No. 187, at ¶ 2(f).  These victims

20   were vulnerable and desperate; they sought treatment from the Defendant because they were in pain,

21   seeking relief, and wanted to continue participating in SJSU Athletics.  *See id*.  The Defendant's conduct

22   with respect to all four victims in the Plea Agreement supports the sentence recommended by the United

23   States.

24   **C.    Reflecting the Seriousness of the Defendant's Offenses, Promoting Respect for the
          Law, and a Just Punishment**

25

26   The United States next addresses three of the sentencing purposes contemplated by Section

27   3553(a)(2)(A), namely, reflecting the seriousness of the Defendant's offenses, promoting respect for the

28   law, and imposing a just punishment, all of which support a sentence above the statutory maximum

UNITED STATES' SENTENCING MEMORANDUM          9
Case No. 5:22-cr-00105-BLF

1   sentence of 24 months.

2                    **a.  Reflecting the Seriousness of the Offenses and Imposing a Just Punishment**

3            There are few crimes more serious than a serial predator who abuses the power afforded to him

4   by the State to take advantage of the women whom he was entrusted to keep safe.  A single instance of

5   sexual misconduct can alter the course of a victim's life.  To adequately articulate the severity of his

6   conduct, the United States refers the Court to the trial testimony, and to the victim impact statements

7   that have been provided to the Court by Probation.  The victims' own words capture the consequences of

8   Defendant's crimes.  Many of the victims in this case have described the negative effects of the

9   Defendant's conduct – from the immediate impact it had on their college education to the lasting toll it

10  has taken on their mental and emotional health.  Although they will recover and thankfully, many have

11  found peace by testifying and/or providing impact statements, the Defendant has caused irreparable

12  harm to more than two dozen lives, in a manipulative and calculated manner.

13           Because of his training and experience, the Defendant was *aware* of the long-term physical and

14  emotional effects his actions would have, but this knowledge did not stop him from preying on

15  vulnerable, young athletes for his own gratification.  The Defendant was not dissuaded by any of the

16  investigations prompted by his conduct.  Although he was given multiple opportunities to take

17  responsibility for his actions during his more than a decade of abuse, the Defendant chose instead to

18  attack the victims' credibility – implying that the victims simply did not understand his treatment

19  methods and even going so far as to tell investigators with the National Athletic Trainers Association

20  that he never worked below "the 3rd rib and massage[d] the breast" of a student athlete, that he never

21  placed electronic stimulation pads lower than "along the waistband," and that the account of one of the

22  charged victims was a "blatant lie."  *See* Scott Shaw Written Response to Allegations in Case # 200462,

23  attached as Exhibit A (marked but not admitted as U.S. Trial Exhibit 138; highlighting added); excerpts

24  of transcript of Shaw Video Statement to NATA Appeals Panel, attached as Exhibit B (video marked

25  but not admitted as U.S. Trial Exhibit 160); at 30:11-31:18.  Even during trial in this very case, two of

26  the charged victims—in fact, the two victims associated with the counts the Defendant pled to—reported

27  seeing the Defendant laughing as they testified about where and how he touched the intimate areas of

28  their bodies.  The Defendant's sentence should reflect his demonstrated lack of remorse and his

UNITED STATES' SENTENCING MEMORANDUM          10
Case No. 5:22-cr-00105-BLF

1    treatment of the victims throughout their attempts to hold him accountable for his actions.  The sentence

2    recommended by the United States is the only just punishment that would reflect the severity of the

3    Defendant's offenses.

4                    **b.  Promoting Respect for the Law**

5            The Defendant's abuse of authority was an egregious, insidious betrayal of the authority with

6    which he was entrusted.  Those who are entrusted with authority by the State, and abuse that authority

7    for their own benefit, damage the rule of law generally.  That is why courts have held that crimes

8    committed by those who abuse positions of authority should be treated more seriously than crimes

9    committed by private citizens.  *See United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000) ("[A]

10   defendant's status as a law enforcement officer is often times more akin to an aggravating as opposed to

11   a mitigating sentencing factor, as criminal conduct by a police officer constitutes an abuse of a public

12   position."); *United States v. Hebert*, 813 F.3d 551, 563 (5th Cir. 2015) (affirming an upward variance in

13   the sentencing of a defendant-officer based on the district court's finding that the defendant abused his

14   position of trust when committing the offense); *see also* USSG § 2H1.1 (imposing a six-level

15   enhancement for crimes committed under color of law).  The sentence recommended by the United

16   States would support the rule of law by upholding this principle.

17           The sentence recommended by the United States would also deter other public employees who

18   are in positions of trust and authority, particularly those charged with working with young adults, from

19   engaging in this type of conduct.  A June 2021 survey found that out of 800 adults who attended private

20   or public universities, more than one in four current or former student athletes reported being "sexually

21   assaulted or harassed by someone in a position of power on campus."  *See* N'dea Yancey-Bragg, *1 in 4*

22   *College Athletes Say They Experienced Sexual Abuse from an Authority Figure, Survey Finds*, USA

23   TODAY, Aug. 26, 2021, https://www.usatoday.com/story/news/nation/2021/08/26/college-athlete-

24   report-sexual-assault-common-survey/8253766002/ (citing results of survey commissioned by nonprofit

25   group Lauren's Kids).  Similarly, the Childhelp Speak Up Be Safe for Athletes abuse prevention

26   initiative reports that 40 to 50 percent of athletes have "experienced anything from mild harassment to

27   severe abuse."  *See* Childhelp Speak Up Be Safe for Athletes,

28   https://www.childhelp.org/speakupbesafe/speak-up-be-safe-for-athletes/.  Yet these abuses are difficult

1    to detect because student athletes (like the Defendant's victims) are likely to trust and defer to adult

2    caregivers, and because abusers (like the Defendant) are often skilled at dismissing complaints or

3    otherwise justifying their illegitimate and illegal abusive conduct.

4         Sentencing the Defendant to the maximum amount of prison time allowed by law – here, 24

5    months – will demonstrate that those entrusted with the power of the State have a particular

6    responsibility to discharge their duties appropriately, and will face real consequences if they seek,

7    instead, to wield their power for their own benefit to the detriment of the very people they are entrusted

8    to protect.  And the fact that crimes like the Defendant's in particular are difficult to detect, is all the

9    more reason to make clear to would-be defendants that a victim's accounts will be taken seriously, will

10   result in an investigation, and where appropriate, accountability and punishment will follow.

11        **D.    Need to Avoid Unwarranted Sentencing Disparities**

12        The PSR indicates that there were an insufficient number of federal criminal defendants

13   sentenced within the last five years in circumstances similar to the Defendant to provide helpful context.

14   *See* PSR at ¶ 100.  However, the fact that Defendant's properly calculated Guidelines would have

15   produced a recommended term of imprisonment between 33 – 41 months, if not for the lower, statutorily

16   authorized maximum sentences for the counts of conviction, suggests that any disparity in a 24-month

17   sentence accrues to the Defendant's benefit.  As explained above, when the Guidelines range exceeds

18   the statutory maximum, a sentence meeting the statutory maximum is appropriate to accomplish the

19   purposes of sentencing.  *See* discussion *supra* Sec. IV; *see also United States v. Kaim*, 2018 WL

20   10290286 at *2 (S.D. Ind. Oct. 10, 2018) (finding statutory maximum sentence necessary – where

21   Guidelines range for 18 U.S.C. § 242 misdemeanor conviction exceeded statutory maximum – to reflect

22   the seriousness of the offense, promote respect for the law, and deter similar conduct).

23        Perhaps more importantly, due to the enactment of 18 U.S.C. § 250 (Penalties for Civil Rights

24   Offenses Involving Sexual Misconduct) as part of the 2022 Reauthorization of the Violence Against

25   Women Act, if the Defendant had committed his crimes on or after October 1, 2022, his conduct would

26   have been a felony punishable up to 10 years in prison.  *See* 18 U.S.C. § 250(b)(4)(A).  These new

27   penalties illustrate Congress's recognition of the gravity of this conduct and that such conduct should be

28   punished accordingly.  And even under other federal statutes in place at the time of the Defendant's

1    crimes, similar conduct would be subject to the same penalties that the United States recommends here.

2    *See* 18 U.S.C. § 2244(b) (imposing maximum sentence of two years' imprisonment upon conviction of

3    sexual contact with another person without that person's permission).  A sentence of 24 months will

4    therefore not create an unwarranted disparity.

5              **E.    There is No Basis for a Variance**

6          The Guidelines' recommendation, coupled with consideration of the Section 3553 factors,

7    support a sentence of 24 months imprisonment.  In order to vary from the Guidelines, the Court must

8    "consider the extent of the deviation and ensure that the justification is sufficiently compelling to

9    support the degree of the variance."  *Gall*, 552 U.S. at 50.  Here, there is no justification to warrant any

10   downward variance.  To the contrary, the facts and circumstances surrounding the Defendant's

11   systematic abuse during his tenure at SJSU warrant a 24-month sentence – which, although the highest

12   sentence allowable by law due to the relevant statutory maximum, is still significantly lower than the

13   Guidelines range that would apply in the absence of the statutory maximum.

14   **VI.    RESTITUTION**

15         As noted in the PSR, the provisions of the Mandatory Victim Restitution Act of 1996 apply to

16   this offense.  *See* PSR at ¶ 20.  To date, at least one victim has requested mental health services and is

17   the process of obtaining the necessary documentation of the cost and number of sessions sought.  The

18   United States respectfully requests that the Court set a date for the final determination of the victims'

19   losses, not to exceed 90 days from the time of sentencing.  *See* 18 U.S.C. §3664(d)(5).

20   **VII.    FINE**

21         Defendant should be ordered to pay a fine of $15,000 per count on Counts 2 and 5, for a total of

22   $30,000.  The PSR notes that Defendant has a positive total net worth and is receiving more than $2,000

23   per month in "pension/retirement" income (presumably funded by the California State University

24   system).  *See* PSR at ¶ 78.  Thus, the PSR correctly concludes Defendant has the ability to pay a fine.

25   *See* PSR at ¶ 79.  The PSR indicates that the fine range for this offense is $15,000 to $150,000, *see* PSR

26   at ¶ 91, and recommends a fine of $15,000.  The United States agrees that a fine is appropriate in this

27   case, and respectfully recommends that the Court impose a low-end, Guidelines fine of $15,000 on each

28   count of conviction in light of the factors set forth in USSG § 5E1.2(d).

1  **VIII.   CONCLUSION**

2         The United States respectfully recommends that the Defendant be sentenced to: A term of

3  imprisonment of 24 months; a one-year term of supervised release; an order to pay a fine of $30,000;

4  and a special assessment of $50.

5

6  Respectfully submitted this 7th day of November, 2023

7                                                               THOMAS A. COLTHURST
                                                                Attorney for the United States
8

9                                                                       /s/
                                                                MICHAEL G. PITMAN
10                                                              Assistant United States Attorney

11                                                              KRISTEN CLARKE
                                                                Assistant Attorney General
12                                                              Civil Rights Division

13                                                                      /s/
                                                                MARLA DUNCAN
14                                                              Trial Attorney
                                                                SARAH HOWARD
15                                                              Attorney Advisor

16
                                                                Attorneys for United States of America
17

18

19

20

21

22

23

24

25

26

27

28